# Perry County *v.* Selma, Marion & Memphis Railroad Company; Hale County *v.* Same.

*Petitions by Counties to Chancery Court, for Payment of Taxes on Railroad by Receiver.*

1. *Liability of railroad property to county taxation, from 1869 to 1875.*—The act approved February 9th, 1870 (Sess. Acts 1869-70, p. 87), which attempted to relieve railroad corporations from county taxes, as therein provided, having been held unconstitutional by this court (*Perry County v. Railroad Co.*, 58 Ala. 546), their liability for such taxes during the years 1869 to 1875, while that statute was supposed to be in force, necessarily follows, if proper proceedings were had, by the officers to whom the duties were by law confided, to ascertain and fix the amount of their respective liabilities.

2. *Assessment of railroad property, and apportionment by auditor.*—Under the provisions of the revenue law of 1868, which continued in force, so far as regards the assessment of the property of railroad corporations, up to and during the year 1874, the auditor was required to assess the property of railroads, assisted by the board of equalization in determining their values ; and there could be no valid levy of a county tax, until such assessment had been made, and apportioned among the several counties ; and although the auditor has no authority to assess back taxes, or the omitted taxes of former years, he may at any time certify to the county assessor the ascertained value of the railroad track in the county, and the proportionate value of the rolling-stock, when the facts have been so ascertained, and shown by legal evidence in his office, that he can determine this proportionate value by a clerical calculation, which is a mere ministerial act, and not judicial in its character.

3. *State board of equalization ; time of meeting, and record of proceedings.* The provision contained in the 26th section of said law, requiring the board of equalization to meet at the office of the auditor on the 3d Wednesday in May annually, for the purpose of transacting their official business, is merely directory ; but the requisitions of the same section, that the board "shall keep a record of their proceedings, which shall be signed by all the members present," are each mandatory.

4. *Waiver of objections to evidence.*—The court does not intervene, *ex mero motu*, and exclude evidence which, though illegal in form, is not objected to ; nor is the admission of illegal evidence, to which no objection was made in the court below, any ground for the reversal of a judgment.

5. *Proceedings of board of equalization ; presumptions in favor of regularity of, as shown by certified transcript from auditor's office.*—The only evidence in this case, as to the meetings and proceedings of the board of equalization, being contained in a "certified transcript from the auditor's office," by which he certified "that the statement of the assessments of the said railroad company, for the years 1869 to 1874, hereunto attached, are true and correct copies of

[Perry and Hale Counties v. Railroad Co.]

the originals on file in this department;" and which was admitted without objection, although it did not appear to be an exemplification by certified copy of what the records contained, but rather the resultant, established facts shown by them ; and which set out what purported to be the valuations placed on the property by the board each year, sometimes reducing the valuations contained in the sworn returns of the railroad officials, sometimes reducing it, and once making no change ; *it was held,* that the court, indulging every reasonable intendment in favor of the regularity of the assessment, would presume that the board met each year, that they kept a record of their proceedings, and that the record was signed by each member who was present, although these facts did not affirmatively appear from the transcript.

6. *Levy of county taxes.*—The authority to levy county taxes is confided entirely to the Court of County Commissioners, who are clothed with a large discretion, and are presumed to be cognizant of the wants of the county ; and the county assessor is required to prepare and lay before them a book of assessments, and to enter all taxable property on the assessment rolls ; yet his failure to do this, or the omission of any taxable property from the book or lists, does not invalidate the levy of the tax, nor relieve the omitted property from liability to it.

7. *Same; county board of equalization.*—The failure of the county board of equalization to meet on the 3d Monday in August, to equalize and correct the county assessment, as required by the 88th section of the law, does not affect the validity of the county levy ; nor is its validity affected by the failure of the chairman of the board to certify to the equalized and corrected valuations as made by the board.

8. *Same ; meeting of Commissioners' Court.*—Under the said revenue law of 1868, the Commissioners' Court was required to meet, for the purpose of making a county levy, immediately after the adjournment of the county board of equalization ; and this time not being otherwise specified, nor capable of definite designation, whenever the court met for that purpose, the statute made it a regular term for that service ; but, under the law of 1875, the court is required to make the county levy at its July term, and can only make it at that term, or at some other term to which it is then adjourned, or at some special term called for that purpose under the general law.

9. *Auditor's certificate to county assessor ; when necessary.*—If it were proposed to collect the county taxes in this case through the county tax-collector, the court "would be inclined to hold the auditor's certificate to the county assessor," as to the number of miles of track in the county, the proportionate value of the rolling-stock, &c., "a condition precedent to the right to make such collection " ; but, the railroad being in the hands of a receiver appointed by the Chancery Court, and petitions being filed in the cause by the county, asking that the receiver be ordered to pay the taxes, the court may require him to do so, the necessary facts being established, without the auditor's certificate.

♦10. *Remandment on reversal, for additional evidence.*—On reversing the chancellor's decree in this case, which dismissed the petitions filed by the counties, this court remands the causes, with instructions to the court below to receive additional documentary or record evidence from either party ; regarding the case as "an exception to a salutary general rule," and not within the judicial policy against opening a controversy, once decided, to further parol testimony.

11. *Interest on taxes.*—The uniform custom has been against the allowance of interest on taxes in default ; and without entering into the discussion of the question, the court declines to award interest on the back taxes in controversy in this case.

APPEALS from the Chancery Court of Perry.

Heard before the Hon. CHARLES TURNER.

These cases, involving substantially the same facts and questions, were argued and decided together, both in the

[Perry and Hale Counties v. Railroad Co.]

court below, and in this court. They originated in petitions
filed in the court below, in the names of Perry and Hale
counties respectively, addressed to the chancellor, asking
orders requiring A. M. Fowlkes, as receiver of the Selma,
Marion, and Memphis Railroad Company, by appointment
of said Chancery Court, in a cause therein still pending and
undecided, to pay to said counties respectively, out of the
moneys and assets of said railroad company in his hands,
the taxes due to said counties from said railroad company
during the years 1869 to 1875, inclusive. The original peti-
tion of Perry county was filed on the 19th April, 1877, and it
was dismissed by the chancellor on demurrer ; but his decree
was reversed by this court on appeal, and the cause was
remanded, as shown by the report of the case in 58 Ala.
546–70. After the remandment of the cause, the petition
was amended in the matter of the averments as to the pro-
ceedings connected with the levy of the taxes claimed for
the years 1870 to 1875, inclusive ; the averments as to each
year being substantially the same as for the year 1869, which
was held sufficient on the former appeal. The petition of
Hale county was filed on the 14th August, 1878, and claimed
the taxes for each of the years from 1869 to 1875, both inclu-
sive. Answers were filed to each petition, by the railroad
company, denying all their averments of fact, and denying
the liability of the company for the taxes claimed. The
causes were submitted to the chancellor for decision, on the
petitions and answers, " and the following note of testimony :
1st, certified transcript from the auditor's office ; 2d, certified
transcript from the minutes of the Commissioners' Court of
said counties." The contents of these transcripts, or the
substance of them, so far as deemed material, is stated in the
opinion of the court. The chancellor held that the tran-
scripts did not show a valid levy of a county tax, and there-
fore dismissed the petitions ; and his decree in each case is
now assigned as error.

JAS. E. WEBB, for the appellants, cited *Perry County v.
Railroad Co.*, 58 Ala. 546 ; 78 Illinois, 560 ; 44 Iowa, 658 ;
21 Pick. 67 ; 11 Wisc. 471–96 ; 45 Iowa, 176 ; 38 Iowa, 633 ;
*Mayor of Mobile v. Moog*, 53 Ala. 570 ; *Stein v. Mayor of
Mobile,* 17 Ala. 234 ; *Stein v. Mayor of Mobile*, 24 Ala. 591 ;
*Mayor of Mobile v. Stein*, 54 Ala. 23 ; Hilliard on Taxation,
290 ; Cooley on Taxation, 258.

JNO. F. VARY, *contra*, cited Burroughs on Taxation, 246–49,
251, 370, 372, 396–8 ; Potter's Dwarris, 224–5 ; Cooley on
Taxation, 37–39, 259–60, 527 ; Blackwell on Tax Titles, 117,

120–22, 267, 289–91 ; Cooley's Const. Lim. 100 ; Hilliard on Taxation, 290, § 2 ; *Ib.* 319–20 ; 5 Mich. 154 ; 14 Illinois, 228 ; 14 Mass. 178 ; 21 Wisc. 184 ; 28 Indiana, 154 ; 7 Barbour, 129 ; 15 Wallace, 506 ; 20 Ala. 446 ; 7 Ala. 85.

STONE, J.—There can be no question that the railroad, appellee in these cases, is liable to the counties prosecuting these appeals, for county taxes for each of the years 1869 to 1875, inclusive, if proper steps have been taken to ascertain and fix the amount of the liability. This results necessarily from the unconstitutionality of the act approved February 9th, 1870 (Pamph. Acts, 87), which attempted to relieve railroads from all county taxes on their " right of way, road-bed, side track, and main track," and on their rolling-stock. *Perry County v. Railroad Co.*, 58 Ala. 546 ; *State Auditor v. Jackson County*, at the present term. That the railroad has failed to pay county taxes, for each of the years mentioned, is a fact not disputed. It defends the present suit on the alleged ground, that no county tax has been legally levied against it, for either of the years mentioned, and that none can now be levied.

The foundation fact, on which a county levy of taxes on this species of property can alone rest, is an assessment for State taxation, which is made by the State auditor, assisted by the board of equalization in determining the values. It is contended for appellee, that what is relied on as an assessment in these cases is invalid, because it is not shown that the board of equalization met on the 3d Wednesday in May, as required by the statute, and because it does not appear that the members of the board kept a record of their proceedings, which was signed by all the members present. Rev. Law of 1868, § 26, page 308 of the Pamphlet Acts.

In *State Auditor v. Jackson County*, we considered many questions which necessarily arise in these cases. Speaking of assessment for State taxes, we in that case announced, that it was our duty " to indulge every reasonable intendment in favor of regularity, rather than paralyse this motive power of the State's machinery." We said, further, " We do not consider the *time* of the meeting of the State board of equalization as mandatory." The duty of apportioning the assessed values between the several counties is cast on the auditor. To do so, he must know the whole length of the main track of the railroad, and the length in the several counties, and the value of the entire rolling-stock on the whole road. This enables him to apportion the rolling-stock. He must also know the number of miles of main track and of side track in the several counties, and the value

[Perry and Hale Counties v. Railroad Co.]

of each, or the value per mile. This will enable him to apportion the tax on the railroad proper, between the several counties. When he has this information before him, he has the *data* on which to make the apportionment. These *data*, as we said in *State Auditor v. Jackson County*, must he record *data*; that is, they must be recorded, as declared in that case. If the record goes farther, and shows the valuation assessed on the right of way, road-bed, &c., and on the rolling-stock, in and for the several counties, then, both State assessment, and apportionment among the counties, have been made. Nothing then remains of the auditor's duties, but to certify to the county assessor. And, as we said in the case just cited: "While we find no authority the law confers on the auditor to assess back, or escaped taxes, and think there is a want of machinery in the law to enable him to do so, we hold he is not without power to certify at any time, to the county tax-assessor, the ascertained value of the track of the road in his county, and the proportion of the value of the rolling-stock, which is subject to tax in his county. And if the facts have been so ascertained, and shown by legal evidence, that by mere calculation he can determine the proportion of values that may be liable to taxation in any given county, this mere clerical function he can perform at any time. There is nothing judicial in this. It is scarcely necessary to add, that the duty the statute requires of the auditor, to notify the assessors of each county through which such railroad runs, of the number of miles of track and value thereof, and the proportionate value of personal property taxable in their respective counties, is purely ministerial, and may be performed at any time." What we have postulated above, is, in legal effect, assessment; which is complete when it "ascertains what persons and property are liable under the tax bill, the value of the property, and the amount of the tax to be paid by each person to the State." Burroughs on Taxation, § 94.

It is contended before us, that the State assessments of this railraad for taxes are void, because it is not shown that the State board of equalization, whose functions precede assessment and apportionment, kept a record of their proceedings, which was signed by all the members present. This duty is certainly mandatory, and if not complied with, the assessment was not legally made. But, does it appear, or must we presume this duty was not complied with? In the condition in which we find these records, what intendments must we indulge? When these cases were submitted to the chancellor, there was a note of the testimony taken, which is made part of the records. One instrument of evi-

dence, thus shown to have been offered by the petitioners, is a "certified transcript from the auditor's office." No objections or exceptions to that testimony are any where shown in the records; and that transcript contains the only testimony offered by either side, tending to show State assessment, or equalization by the State board. It may be that this transcript, or parts of it, are not legal evidence, and would have been ruled out, if objected to. This is not the only illegal evidence that was offered, and received without objection. The *ex-parte* affidavit of Mr. Fowlkes was put in evidence by the railroad company. To avoid delay and expense, and to hasten trials, admissions are frequently made, and testimony, illegal if objected to, is frequently allowed to be introduced. The court, of its own motion, does not interpose and reject evidence, merely because it is illegal in form, unless its action is invoked by an objection or motion. In submitting causes, parties have unlimited power and discretion over the instruments of evidence, pertinent to the questions in issue, upon which they invoke the determination of their controversies. They can agree on facts, which a record or writing shows, and of which the record or writing is the highest and only evidence, if demanded; and neither the primary nor the revising court will refuse to consider such substituted evidence, or disallow it *ex mero motu*. It is no ground for reversal, that the court of original jurisdiction received illegal evidence in the absence of objection to its introduction.—*Thompson v. Lee*, 31 Ala. 292; *Thomason v. Odum*, 31 Ala. 108; *Townsend v. Jeffries*, 24 Ala. 329; 1 Brick. Dig. 749, § 1627; *Ib.* 776-7, §§ 36, 38, 53.

In what is called "certified transcript from the auditor's office," there certainly are irregularities, which, if objection had been made, would have called for its exclusion. It does not appear to be an exemplification, by copy certified, of what the record in the auditor's office contains. It is rather a certificate by the auditor that the statements he exhibits are the resultant, established facts, of what is shown in his office. It does not assume to set forth the record of the proceedings of the State board of equalization, nor does it show that a record was made and signed by the members present. The certificate of authentication is as follows: "I hereby certify, that the statements of the assessment of the Selma, Marion, and Memphis Railroad Company, for the years 1869, 1870, 1871, 1872, and 1873, and 1874, hereunto attached, are true and correct copies of the originals on file in this department;" signed by the auditor. This certified transcript contains copies of the sworn annual returns to the auditor, made by the president and secretary of the railroad, each bearing

date in April of the several years. These returns set forth the whole length of the main track of the railroad, the whole length of the side track, the value of each, and the description and value of the rolling-stock. We should have stated, the transcript contains no return for 1869, but contains the return for the years 1870 to 1874, inclusive. Each of these contains a statement of number of miles and value of main and side track in each county through which the road runs. There is what purports to be the valuations placed by the board of equalization, each of the years, except 1873. If the board had a session, or made any change in the year 1873, it is not shown. Each of the other years, from 1871 to 1874, the board changed the valuations. In 1870, 1871, and 1872, the board reduced the valuations returned very materially. In 1874, the valuations were increased by the board. In 1870, the board stated the length of main and side track in each county, total length of main track, total valuation of main and side track combined, and total value of rolling-stock. In 1871, and in 1872, the board ascertained total length of main and of side track, fixed the valuation of each, and of entire rolling-stock; and ascertained the length and value, each, of the main and side track in each of the counties through which the railroad runs. In 1874, the board ascertained total length, each, of main and side track, total value of each, and the total value of the rolling-stock. In 1875, the board of equalization ascertained the length and value, each, of main and side track, and proportioned value of rolling-stock, in Perry county. The transcript is silent as to what they did this year with Hale county, if any thing; but the report to the auditor, copied in the transcript, sets forth the total length, each, of main and side track, and of the main and side track, each, in Hale county. These ascertained facts, if sufficiently shown, furnish all the information needed, to show the values, each year, on which county taxes are to be collected. They furnish the *data*, from which, by mere calculation, the values can be ascertained.

Are the facts recited above sufficiently proven? It will be borne in mind, it is State assessment by State officers we are dealing with. In *State Auditor v. Jackson County*, we said: "It is our duty to indulge every reasonable intendment in favor of regularity in assessment for State taxation." We feel it our duty to presume, in the condition in which we find these records, that the State board of equalization had a meeting each year, that they kept a record of their proceedings, and that the record was signed by each member of the board who was present. It follows, that each State assess-

ment, from 1869 to 1875, inclusive, was regularly made according to the evidence before us.

It is urged for appellees, that there has been no valid levy of county taxes on this railroad property, for either of the years 1869 to 1875, inclusive ; and such was the view taken by the chancellor.  The particular grounds of objection to the regularity of the levy are, that the auditor did not notify the county assessors " of the number of miles of  track, and value thereof, and the proportionate value of personal property, taxable in their respective counties " ; that the assessor did not " add the value of all other real  property, except," &c., " together with all fixtures, machinery, tools and other property within their respective counties " ; that this property was not entered upon an assessment-list; that it was not entered in a book of assessments ; that the county board of equalization frequently met on days other than the 3d Monday in August, for the purpose of equalizing assessments ; that the certificate, if any was made, of the chairman of the board of equalization, upon, or  appended to  the assessor's book, that the board had equalized and corrected the assessment, did not authenticate the assessment of  the railroad track and rolling-stock, because their assessment was not on the book; that the Court of County Commissioners, when they levied the county tax, were not in session on any day of a regular term fixed by law ; and, finally, when the county tax was levied, it was done by  declaring a *per-centum* on the assessment shown in the book of  assessments before them, and that the court did  not levy a  county tax on this property, because it did not appear on  the assessment book. Rev. Law of 1868, sections 24, 33, 37, 97, 98, 101 and 103.

The objections noted above, considered collectively, are based on the assumption, that county taxes are levied so as to realize a given sum, and no more ; that this end is accomplished, by first ascertaining the aggregate sum of the State assessment, and then graduating the county levy, so as to yield the required sum ; that property not shown on  the book of assessments, does not enter into the computation, and to allow it to be brought in, would increase the aggregate of the county levy beyond the sum required or intended.  Hence, it is contended, no county tax is in fact levied on property omitted from the book of assessments.

To the Court of County Commissioners is confided the entire authority to levy county taxes.  They are presumed to be cognizant of the wants of the county, and are clothed with a large discretion.  It is without limit, unless one is imposed by the constitution, or by statute.  Of course, they will and should consult the wants of the county, present and prospec-

[Perry and Hale Counties v. Railroad Co.]

tive, in determining the proper rate, or *per-centum*. To this
end, it is made the duty of the assessor to prepare, and have
the books of assessments ready, to be laid before them. But
this is not a condition precedent to their right to levy a val-
id county tax. If it were, no county tax could be demanded
for property which had escaped the tax-assessor ; for neither
it nor its value is before the Court of County Commissioners
when the county tax is levied. As we said, the matter of
the rate, or *per-centum* of the county levy, is within the sound
direction of that court; and no tax-payer would be heard to
dispute its rightful levy, on the ground that it was in excess
of the county's wants. The duties enumerated above are
cast on the county assessor, and on the board of equaliza-
tion, and they should be performed. Their omission the law
would censure ; and if the result of wilfulness or negligence,
might punish as a misdemeanor. They are not of the class
called mandatory, or conditions precedent to the right to
levy a county tax. When the tax is levied by the Court of
County Commissioners, all property liable to taxation in the
county is thereby made liable to the tax so levied, whether
the court, at the time of the levy, knew of its presence in the
county or not. We therefore hold, that neither the failure
of the auditor to certify to the assessor the number of miles
and value of the railroad track in the county, or the appor-
tioned value of the rolling-stock, nor the failure of the as-
sessor to enter the property on a list, or in the assessment
book, nor the failure of the county board of equalization to
meet on the third Monday in August, to equalize and correct
the assessment, nor the failure of the chairman of the board
to certify to the equalized and corrected valuations,—neither
one, nor all of these omissions, will avoid the levy of county
taxes. It may be that the said certificate of the chairman of
the board is a necessary condition to the right of the county
tax-collector to collect the taxes ; but upon that we need ex-
press no opinion.

Section 103 of the act of 1868 makes it "the duty of the
Court of County Commissioners, immediately after the ad-
journment of the board of equalization, to proceed to levy
the amount of taxes required for their county for that year,
not to exceed the rate levied by the State." It could not
be known when the board of equalization would adjourn,
and hence the statute does not fix the time when the court
would or could meet for this service. The language of the
statute forbids the inference that such session must necessa-
rily be at a regular term of the court. It was to be immedi-
ately after the board of equalization completed its labors ;
and falling when it would, the statute made it a regular term

for this service.  This clause is simply directory.  The maximum of the levy fixed by this section is mandatory.  Section 93 of the act of 1875 provides, that the levy of county taxes shall be made at the July term of the Court of County Commissioners.  Section 87 of that statute had made the second Monday in July a term of the said court to examine the assessor's returns, &c.  The levy of the county tax can only be made, under this statute, at a regular term of the court, some term to which the court is adjourned from a regular term, or at a special term called according to section 744 of the Code of 1876.  This, because the court can not lawfully meet for the purpose at any other time, and not because the duty is what is termed mandatory.

If it were proposed to collect this tax by the agency of the county tax-collector, we would be inclined to hold the certificate of the State auditor to the county assessor, notifying him of "the number of miles of track and value thereof, and the proportionate value of personal property taxable" in his county, is a condition precedent to the right to make such collection.  These proceedings, however, are petitions to the court, for direction to the receiver to pay the taxes.  In such case, the auditor's certificate to the county assessor can accomplish no purpose.  It is sufficient for this form of relief that the amount of the taxes has been legally ascertained, or that sufficient facts are shown to render the ascertainment a matter of calculation.  This being done, the taxes become an ascertained debt, or legal liability, it is the duty of the court to order the payment of.

Under the foregoing principles, governed by the state of the records now before us, the railroad corporation is liable for the taxes for each of the years named, except, perhaps, the years 1873, and 1875.  For the year 1873, it is not averred that the board met for the purpose of equalizing the values.  For the year 1875, there is nothing shown as to Hale county, and a very imperfect showing as to Perry county.  Perhaps, these omissions and irregularities, as to the year 1875, may be supplied and corrected on another hearing.  As to the years 1869, 1870, 1871, 1872, and 1874, as the records now stand, the railroad is liable for the county levies, as shown by the proceedings in the several years.  We will not, however, render final decrees in these causes, but will remand them for further proceedings in the court below.  We do this, for the reason, that to decree otherwise, would produce an inequality we are unwilling to make.  There is another reason, which operates to make this an exception to a salutary general rule.  The testimony to be

[Clark v. Knox.]

adduced on another trial is record, or documentary, and the judicial policy against opening a controversy, once decided, to further parol testimony, does not apply. We therefore remand the causes, with instructions to the court below to receive further documentary or record proof from either party.—See *State Auditor v. Jackson County*, at the present term.

Without entering, at this time, into a discussion of the question, we decline to award interest on these back taxes. The uniform custom in this State, so far as our information extends, has been not to demand interest, as interest, on taxes in default, and we will not disturb that custom.

The decree of the chancellor, in each of the causes, is reversed, and the causes are remanded.