Hallo v. Helmer.

HYMAN HALLO AND ROCELIA PALMER, APPELLEES, v. LOUIS HELMER, TREASURER OF LANCASTER COUNTY, AND CHARLES P. DEWEY, APPELLANTS.

1. Taxes: ASSESSMENT OF LAND FOR TAXATION: OATH OF ASSESSOR: INJUNCTION. It is essential to a valid assessment of land for taxation that the assessor take and subscribe an oath, as directed by sec. 12, ch. 66, Gen. Statutes. But the oath being made and returned with the assessment roll, the mere fact that it was not "*attached*" thereto is no ground for enjoining the execution of a tax deed.

2. ——: RAISING ASSESSED VALUE: NOTICE OF. Where the value of property as returned by the assessor as to an entire precinct or tax district is relatively too low, it may be raised by the board of equalization, without notice previously given to property owners.

3. ——: TIME OF LEVY. The fact that city taxes were levied after the usual time, or later than they ought to have been, there being no act of limitation, is not a ground for enjoining tax proceedings.

4. ——: EXEMPTION FROM: CONSTITUTIONAL LAW. By an ordinance of Lincoln, a city of the second class, the lots in controversy were in terms specially exempted from municipal taxation for a term of years. Afterwards in 1875, this ordinance, by a special act of the legislature, was "declared to be legal." *Held, first*, that the ordinance was void, it being in conflict with a provision of the act for the incorporation of cities of the second class requiring that taxes for city purposes be levied "on all real, personal, and mixed property ° ° ° taxable according to the laws of the State of Nebraska," said lots being so taxable. *Second*, that, as a general rule, defects in tax-proceedings cannot be cured where there was a lack of jurisdiction to take them. *Third*, that the act declaring said ordinance valid was void for being in conflict with Sec. 1, Art. 8, of the Constitution of 1866, which provided that "The legislature shall pass no special act conferring corporate powers."

APPEAL by defendants from a decree rendered in the district court, by POUND, J., confirming the report of S. J. Tuttle, referee, and perpetually enjoining the defendant

treasurer from executing a tax deed to certain property of plaintiffs, etc.

*Burr & Kelly*, for appellants.

1. Only one assessor's oath is required. Sec. 12, Chap. 66, Gen. Stat., 2. The board had power to raise assessment 20 per cent. *Dundy v. Richardson County*, 8 Neb., 516. Law of 1875, and the ordinance of city exempting this property, were void. *Hurford v. Omaha*, 4 Neb., 336. *Fletcher v. Oliver*, 25 Ark., 289. *Clegg v. School District*, 8 Neb., 178. *Washburn College v. Shawnee County*, 8 Kan., 344.

*Emil Schultz*, for appellee Hallo, and *A. L. Palmer*, for appellee Rocelia Palmer, (*E. E. Brown* with them.)

1. Assessment of real property, the assessment roll not having oath of assessor attached, is void. *Morrill v. Taylor*, 6 Neb., 236. *Lynam v. Anderson*, 9 Neb., 375. 2. Referees finding is that neither notice was given to plaintiffs, nor was any testimony heard before the board. This made the increased valuation and the assessment and levy based thereon void. *Dundy v. Richardson County*, 8 Neb., 515 and 516. *South Platte Land Co. v. Buffalo County*, 7 Neb., 253. Cooley on Taxation, page 541. *Sioux City & P. R. R. v. Washington County*, 3 Neb., 43. *Lammers v. Nissen*, 4 Neb., 253. *Jones v. Commissioners*, 5 Neb., 564. *Avery v. East Saginaw*, 7 N. W. R., (177). S. C., 44 Mich., 587. 3. The ordinance which appellants contend is void, simply exempted these lots from the payment of these taxes, without increasing anybody elses taxes. The council, by said ordinance simply took the amount of these taxes, and turned them over to the appellee, Hallo, for a good and valid consideration, to-wit: The erection of a "building seventy-five by ninety feet, with a stone foundation and brick superstructure, the upper story of which is to be finished into

Hallo v. Helmer.

a hall suitable for a————city hall, and to be twenty-two feet between joists, said building to be completed on or before the first day of August, A. D., 1873." This is declared by said ordinance to be a contract between the city of Lincoln and the said H. Hallo. See Laws of 1875, page 319. The city authorities had the power to make such contract. Gen. Stat., page 138, Sec. 6, subdivision 4. Id., Sec. 31, XII., XXI., XXXIII. See also Cooley on Taxation, 322. *Nebraska City v. Gas Company*, 9 Neb., 344. *Grant v. City of Davenport*, 26 Iowa, 396.

LAKE, J.

This action was brought to enjoin the execution of a tax deed to three lots in the city of Lincoln, on the ground of the illegality of the taxes for which they were sold.

In the district court the case was sent to a referee, who found all of the material facts on which the relief was sought in favor of the plaintiffs, and recommended a decree accordingly, which was rendered. Therefore the material inquiry here is whether the facts alleged, and found by the referee, entitle the plaintiffs to the judgment which the court rendered. Referring to the petition, these facts are found to be. 1st. That the assessment was invalid for the reason that the assessor did not take and subscribe an oath, and attach the same to the assessment roll, as required by Sec. 12, Ch. 66, Gen. Statutes. 2d. That the county commissioners, as a board of equalization, without notice to the plaintiffs, increased the valuation of all city property, as returned by the assessor, twenty per cent., as a basis for the levy of taxes for the year 1875. 3d That the assessment for, and the levy of, city taxes for said year were not made until about the 16th of July, whereas they should have been made much earlier. 4th. That a portion of the taxes for which said lots were sold were

for city purposes, and it is contended that these were ille-
gal for the reason that they were levied in violation of a
certain ordinance of the city, which in terms had
exempted said lots from all such taxes from the year
1873 to 1877, inclusive, in consideration of certain pri-
vate valuable improvements made thereon, which ordin-
ance had been formally ratified and confirmed by an act
of the state legislature. If these facts entitled the
plaintiffs to the relief prayed, then the judgment of the
court below is right and must be affirmed, but otherwise
it must be reversed, and the case dismissed for want of
equity.

It should be borne in mind that this is an action which
must be governed by equitable principles; and the suc-
cess of the plaintiffs depend upon the bringing of their
case within some one of the rules of equitable cognizance.
In such an action, a showing which, possibly, might be
successful against the holder of a tax deed, in an action
for the recovery of the land, may be totally inadequate
as a ground for affording affirmative relief of the char-
acter here sought.

As to the oath which the statute requires the assessor
to attach to his return of property for taxation, and the
want of which is made the first ground of complaint, it
appears that instead of uniting real and personal prop-
erty, as the statute evidently contemplates, he kept the
two kinds separate, thereby making, nominally, two
parts of what should have been in form, as it was in legal
effect, but a single assessment roll. To that part con-
taining the list of personal property the required oath
was actually *attached*, but to the other there was none.
And this circumstance alone, it is now insisted, renders
the assessment, and consequently the levy of taxes as to
the realty, absolutely void. But we think this result
does not follow. Such a ruling would be much too
technical. Without the least doubt the oath which the

assessor made and attached to one division of his return was intended by him, as its terms, fairly construed, really import, to apply to his entire assessment for that year, and to cover all of his official duties under the law. This being so, suppose for instance, that it had not been attached to either of the two parts, but instead simply returned with them, and filed in the proper office, would the entire assessment have been vitiated, and the taxes depending thereon uncollectible? In no case, as yet, has this court gone so far as that, and we could not so hold with our present understanding of the law.

It must be conceded that in *Morrill v. Taylor*, 6 Neb., 236, language is used from which, perhaps, it may be reasonably inferred that this court approved the doctrine that an actual corporeal attachment of the oath to the assessment roll is essential. That was a case in which the purchaser of a lot at tax sale having taken possession thereof, sought to defend it by his tax deed against the delinquent owner, in an action of law for its recovery. On the trial two very important facts stood undisputed—in fact conceded; 1st. That no assessors oath was attached to the assessment returns; and 2d., that the county clerk having made due search could find none in his office, the place where they ought to have been, if ever made, and then in existence. In addition to this search, no effort was made on the trial, nor was there anything in the case tending to show that the required oath had in fact been taken. From such evidence it was a legitimate inference, doubtless, that the assessor had neglected his duty in this particular, and so the court held.

It is apparent from this that the facts upon which that case was decided were quite different from those of the one now before us. In that, according to the evidence, no oath was in fact taken. In this, not only was one

taken in due form, but it was returned with, and actually attached to one section or part of the assessment roll. There the court was not called on to decide what would be the effect of an oath really taken, returned with, but not attached to the roll, but merely as to the consequence of omitting the oath altogether. As to the necessity of the oath, this language was used in that case, and we now repeat it as a sound statement of the law: "It seems to us very clear, both upon principle and authority, that a substantial compliance with the requirements of the statute prescribing the oath to be taken and subscribed by the assessor, is an essential pre-requisite— a jurisdictional fact—that must exist before the board of commissioners can exercise any power in the taxation of property, and that without such oath there is in law no assessment." Clearly as there was " in law no assessment," of the lot there in dispute, neither was there any warrant for the levy of taxes upon it, and consequently no authority for the tax sale under which the defendant there claimed ownership, and a right to the possession he was defending. It is clear, therefore, that the decision in that case is by no means decisive of the point raised in this one as to the legality of the assessment.

Without now determining what our holding would be in an action for the possession of the land under a tax deed resting on an assessment in the condition of this one, we are fully satisfied that in a proceeding to enjoin the collection of a tax, or as here, the execution of a tax deed, this irregularity respecting the oath is not sufficient to warrant the court in interfering. There is at least a formal assessment, and no complaint that it is unjust. Every step that the statute requires in making it, save the actual attachment of the oath to that portion of the roll containing the description of real property, was taken, and following our decision in *Lynam v. Anderson*, 9 Neb., 367, we must hold that this failure to attach the

oath furnishes no just ground of complaint. A formal assessment, even if it do not in every respect conform precisely to the requirements of the statute, will, in an equitable proceeding, support a levy of taxes, otherwise legal. *South Platte Land Company v. Crete,* 11 Neb., 344. And on this point see also *Wood v. Helmer,* 10 Neb., 65.

The second point, that the county commissioners raised the valuation without notice to the plaintiffs is fully met by our decision in the case of *Dundy v. Richardson county,* 8 Neb., 508. We there held that where the assessment of property in one district is relatively too low, it may be raised by the board of equalization without notice to the owners. The showing here is that the increase was general, applying to all city property, wherefore the inference is that, in the opinion of the commissioners, the valuation as returned by the assessors within the city was too low, and that the increase was essential to a just equalization. Their action in this particular is clearly within the rule of the case referred to.

As to the third point, that the levy for city purposes in 1875 was made somewhat later than usual, or perhaps than it ought to have been, we believe very little if any reliance was placed thereon by counsel in argument. At all events there is no equity in it. There was nothing that we are aware of to hinder the city council, if they saw fit, from making the levy as late as the month of August, the time charged in the petition, or even as late as the 20th of November, as found by the referee. By the act under which the city was incorporated ample authority was conferred upon the corporation to levy and collect taxes for revenue purposes, and without any direction or restriction as to when it should be done. There is no merit in this point, and we pass it without further comment.

Apparently the most serious objection urged to this tax sale is the fact that it was in part for a tax levied in vio-

lation of an agreement, as before stated, on the part of
the city, by ordinance, to exempt these lots for a time
from taxation for municipal purposes.  In reality, how-
·ever, the question thus raised is a very simple one, and
derives its chief importance from the fact that this formal
·exemption was afterwards, by an act of the legislature,
approved February 25th, 1875, "declared to be legal."
'This act.of legalization implies of course that until then
the ordinance was illegal.  And so without any doubt it
was.   The corporate authorities of Lincoln derived all of
the powers they possessed or could lawfully exercise over
the subject of taxation from the state legislature through
the act of incorporation.  Referring to that act, which
was approved March 1st, 1871, we find, as before stated,
that the power to tax is given under certain restrictions,
·one of which is that the levy must be "on all real, per-
sonal and mixed property, within the limits of said cities,
_taxable according to the laws of the  state of Nebraska._"
From this we see that the power of determining upon
what property city taxes shall be laid is purposely with-
.held from the corporate authorities, and to ascertain
whether any particular species or article is either tax-
able or exempt, resort must be had to the general reve-
nue law of the state, and not to city ordinances.   Under
the state laws, these lots were not exempt from taxation.

This formal exemption, or agreement to exempt, being
therefore illegal, and of no effect, did the act of the legis-
lature cure the defect?  In an able work on taxation it is
stated as a general rule, that defects in tax proceedings
"cannot be cured when there was a lack of jurisdiction to
take them."   Cooley on Taxation, 227.   The ordinance in
·question having been passed without authority, and in
defiance of the provision in the act of incorporation above
referred to, is within this rule.

. Back of this, however, there is quite as formidable, and
;still more radical reason why no advantage can flow from

this action of the legislature. The agreement to exempt these lots from taxation was, as we have shown, an assumption of a corporate power. And the power of exemption, in any case, by the city government, like the power of taxation, could come only from the state through a legislative grant. Under the constitution, such a grant could have been made only by a general law, applicable to all cities of the same class. "The legislature shall pass no special act conferring corporate powers." Sec. 1, Art. 8, Cons. 1866. Under this restriction of the supreme law, could the legislature by a special act, applicable to the city of Lincoln alone, have authorized the local government to determine what property should be taxed, and what exempt from taxation? Clearly not. And if this power could not have been thus directly given prior to its assumption, could it be afterwards, indirectly, as was here attempted, by a special act of legalization? That it could, cannot, we think, be seriously contended for by any one. To so hold would be a palpable disregard of a most important and very plain provision of the constitution.

For these reasons we are of opinion that the facts alleged in the petition, and found by the referee, make no case for equitable relief. The judgment, therefore, must be reversed at the costs of the appellees.

REVERSED.