No. 19,143.

PEOPLE OF THE STATE OF COLORADO, EX REL. DUKE W. DUNBAR, ATTORNEY GENERAL *v.* ALBERT R. HIVELY, ASSESSOR, ETC.

(344 P. [2d] 443)

Decided September 17, 1959.

Mr. DUKE W. DUNBAR, Attorney General, Mr. JOHN W. PATTERSON, Assistant, Mrs. PATRICIA MALLOY, Assistant, for petitioner.

Mr. RICHARD H. SIMON, Mr. CHARLES A. HASKELL, Mr. ROBERT J. FLYNN, for respondent.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

The Attorney General filed a petition on July 21, 1959, seeking the issuance of a citation to the Respondent Hively to show cause why he should not be adjudged in contempt of Court for failure to comply with the orders which were entered in Case No. 18,871, *People of the State of Colorado v. Albert R. Hively, Assessor of Colorado,* 139 Colo. 49, 336 P. (2d) 721. Hively has filed an answer and the Attorney General has filed a reply. Memoranda in support of the allegations of the several pleadings have been submitted and the cause is at issue.

The order which respondent is alleged to have refused to obey is that entered in this Court on February 26, 1959, and which reads as follows:

"On consideration of the pleadings and arguments of counsel herein, it is hereby ordered and adjudged that the rule to show cause issued in this cause be, and it hereby is, made absolute; that the respondent, Albert R. Hively, Assessor of the County of Arapahoe be, and he hereby is, ordered and commanded to carry out the order of the petitioner, the State Board of Equalization, fixing the 1958 valuation of real and personal property in Arapahoe County as submitted by the Colorado Tax Commission at the sum of One Hundred Fifty-three Million Five Hundred Twenty-three Thousand Nine Hundred and Ten Dollars ($153,523,910)."

The petition alleges that the records of the Treasurer of Arapahoe County show: Notwithstanding the ruling of the State Board of Equalization that the total valuation of real and personal property in Arapahoe County be in the amount of $153,523,910, the respondent caused to be filed with the County Treasurer on January 16, 1959, his assessment roll and tax warrant for the county in which the total valuation of property in Arapahoe County was shown to be $143,536,140. It is also alleged that the mill levy for state purposes is 3.560, and that this has been applied to respondent's assessment figure

of $143,536,140 instead of $153,523,910 resulting in a loss of revenue to the State of Colorado in the amount of $35,556.46. The petition contains the further allegation that "Hively refuses and wilfully neglects to obey the order of this Court entered in said action No. 18,871, which refusal and neglect is unlawful and against the dignity of this Court and has impeded, impaired and prejudiced the due administration of justice and resulted in loss and damage to the petitioner in the amount of $35,556.46."

There is little dispute in the facts but Hively in his answer raised the following points:

1. That the Court lacks jurisdiction to render a personal judgment against him. He argues that the action was originally against Balleydier, his predecessor, and that he did not take office until January 13, 1959; that there was a failure to comply with Rule 25 of the Rules of Civil Procedure in substituting him as a party. He points out that this rule contemplates the filing of a supplemental pleading, and the giving of reasonable notice.

2. Although he admits that on January 16, 1959, he signed the tax list and warrant for Arapahoe County, he points out that he was not then a party to the action. He argues that the act of signing the tax list was necessary and that the act was done on advice of counsel in order to comply with the statutory time table and so as not to jeopardize the collection of taxes.

3. That the "order" of the State Board of Equalization was not an order at all but was a mere resolution of that body and that this attempt to adjudge him in contempt for failure to comply with something short of an order is invalid.

4. That when the order of this Court was issued it was too late to change the tax list, and he was uncertain as to how to proceed and he thereupon filed a petition seeking the advice of this Court "as to how to legally proceed herein."

5. That compliance with the Court order required the cooperation of persons other than himself and the Court lacked jurisdiction over such other persons.

The points which merit discussion are:

1. Whether the Court in case No. 18,871 had jurisdiction over the person of Hively.

2. Whether Hively's contention that it was impossible to carry out the Court order is valid.

3. Whether he acted in good faith and for that reason should not be adjudged in contempt.

1. *Jurisdiction.*

We are of the opinion that Hively was a party in case No. 18,871 and subject to the order entered therein.

a. It is contended that the "pleading" of the Attorney General was inadequate in that it did not allege that Hively, to paraphrase Rule 25, "continues or threatens to adopt or continue the action of his predecessor." Under the facts and circumstances here presented such an allegation was not essential. This fact was readily apparent. This cause was orally argued on January 26, 1959, 13 days after Hively had taken office. To say the least, a vigorous presentation of the position which Balleydier had taken and which Hively continued to follow was presented. In his objections to the substitution dated February 3, 1959, Hively showed little disposition to relent. In fact, he alleged that it was impossible for him to "amend or alter any official records or change any assessments for the tax rolls of Arapahoe County for the year 1958, which records or assessments for tax rolls were prepared by a former associate." Hively did not mention the fact (which we now know) that he had filed the tax list and warrant as prepared by his predecessor and thus set in motion machinery which gave rise to his contention of impossibility. Hively does not allege that it was his desire to comply with the directions of the State Board of Equalization but was prevented from doing so by following the act of his predecessor. Yet that is what he would have the Court infer. His conduct

throughout this entire case refutes such inclination. It cannot be said, therefore, that the failure of the Attorney General's motion to allege continuation of the policies of Hively's predecessor in office results in loss of jurisdiction over Hively.

b. The procedure which was followed in substituting Hively was not strictly in accordance with Rule 25d. This, however, is understandable. Unquestionably it was the viewpoint of the Attorney General and of this Court that the substitution was a formal matter. There was no doubt whatsoever but that Hively intended to carry out the previous policies and the important thing was to decide the case on its merits in as short a time as possible so as not to interfere with the tax collecting process and the case was accordingly given emergency attention. Notwithstanding this, however, it cannot be said on examination of the record that Hively did not receive adequate notice and hearing with respect to the substitution. He was admittedly represented by the same attorneys who had represented Balleydier. Service of the Attorney General's motion was made on these lawyers and written objections were filed on behalf of Hively by such counsel. Hively's objections received adequate consideration and on February 6, 1959, were overruled. It was unnecessary to serve Hively with *process* and no offer was made by him to file an additional pleading or supplemental brief suggesting another or different theory than that presented on behalf of Balleydier. We think that there is no merit in Hively's position that he was not subject to the order of this Court.

2. *Impossibility of Compliance.*

We turn now to the issue of whether Hively can defend on the ground that it was legally impossible for him to comply with the order of February 26, 1959, in cause No. 18,871. His contention here is based upon the fact that he had theretofore, on January 16, 1959, certified and transmitted the tax list and warrant to the

County Treasurer and that the entire matter was beyond his control. He argues that the statute required him to certify the tax list and warrant as soon as possible after he was sworn in as assessor and that once he acted he would have jeopardized the collection of taxes in Arapahoe County had he sought to change this tax list and warrant. That in refusing to carry out the order of Court he exercised his judgment in good faith.

The basic fallacy in this argument is that it was not necessary, in fact or in law, for him to certify the tax list and warrant in the form in which he found it. He could have complied with the direction of the Board of Equalization which required him to increase the valuation in the amount of $10,000,000. Since he took it upon himself to exercise judgment (which he had no right to do), he might well have concluded that he should follow the mandate of C.R.S. 1953, 137-3-47, which provides:

"*Correction of Assessment.* — Immediately upon the receipt by the assessor of each county of the statement of changes in the assessment of his county made by the state board of equalization, he shall immediately make such correction of the assessment and assessment roll as may be necessary to carry out the directions of the state board of equalization."

It would seem that he would have been moved to comply with the law by reason of the fact that the mandamus action was then pending in this Court and an order to show cause directed to his predecessor had then issued. Notwithstanding these considerations, Hively chose to ignore the above quoted statute and the direction of the Board of Equalization and to take the risks incident thereto. After the announcement of the decision of this Court he continued in his recalcitrant attitude and he now asks the Court to believe that he was at all times acting in good faith. The record indicates that Hively and his predecessor were determined, regardless of consequences, to follow the course of action

which they followed from the inseption of the proceeding until the end. His excuses are not acceptable.

It is unnecessary to determine whether the order relates back to the unlawful refusal of Hively to make the corrections directed by the Board of Equalization before certifying the tax list and warrant to the treasurer. We are convinced that Hively could have filed an amended or supplemental tax list and warrant in accordance with the order of this Court of February 26, 1959.

Section 137-3-49 declares in part as follows:

"As soon as practicable after the taxes are levied, and not later than the first day of January, annually, every county assessor shall deliver to the county treasurer the tax list and warrant under his hand and official seal, setting forth the assessment roll, with the taxes extended, * * *"

He argues that the failure on his part to make this list on or before January 1, 1959, would imperil tax collection. However, he could not have believed that this requirement was jurisdictional. As deputy assessor, had he so believed, he would have (prior to January 13, 1959) seen to it that the statute was strictly complied with. Instead he certified and delivered the tax list and warrant on January 16, 1959. His argument that in such circumstances he believed it should have been forwarded in the uncorrected form is unacceptable. In any event, he disclosed no such conscientious attitude with respect to other statutory mandates. The law is settled that this provision is directory and not mandatory. To hold that all county tax collections are void because the assessor fails to deliver the tax list and warrant on the appointed day would in large measure emasculate the tax structure. The contrary was held in *Tallon v. Vindicator Gold Mining Company,* 59 Colo. 316 at 328, 149 Pac. 148. There it was said:

"Whether statutes involving the constructive steps incident to taxation are mandatory or directory depends upon whether or not the directions given the officers

are for the benefit of the taxpayer, to give him notice and an opportunity for a hearing, or for any other purpose important to him. The time for fixing the levy, and delivering the tax warrant to the treasurer, are not for the purpose of giving the taxpayer notice, or a hearing, and are of no concern or importance to him, so far as the time for doing the acts are concerned. Unquestionably it is the duty of the board to make the levy so that the assessor can certify the tax list and warrant to the treasurer on or before the 1st of January, but a failure of the commissioners, or the assessor, to do either within the time specified, in no manner affects the taxpayer and is directory. Cooley on Taxation (2d Ed.) pp. 283, 298; *State v. Hannibal Co.*, 113 Mo. 297, 21 S.W. 14; *Wingate v. Ketner*, 8 Wash. 94, 35 Pac. 591; *Perry and Hale Counties v. Railway Co.*, 65 Ala. 391; *Hallo v. Helmer*, 12 Neb. 93, 10 N.W. 568; *State v. Harris*, 17 Ohio St. 615; *State ex rel. v. Bank*, 120 Mo. 161, 25 S.W. 372. * * *"

■ Undoubtedly the carrying out of the directions of the Board of Equalization which was ordered by this Court would have given rise to difficult problems and it might have been necessary for the County Commissioners to reconsider the levy in view of the increased valuation, or it might have been necessary for the treasurer to compute and submit supplemental tax bills. However, these problems were of no concern to Hively. He was ordered to take the necessary steps to carry out the direction of the Board of Equalization. Whether other officials who were not before the Court carried out their duties was not his concern. It was not his function to decide the expediences of the situation on either January 16, 1959, when he certified the tax list and warrant, or on February 26, 1959, when he failed to comply with the order of this Court. As a ministerial officer it was for him to do as he was directed. This duty was pointed out to him in *People v. Hively*, supra.

The Attorney General has called our attention to an

early decision of the Supreme Court of Illinois involving the refusal of the Clerk of the County Court in that state to carry out the decision of the State Board of Equalization, *The People ex rel. v. Salomon*, 54 Ill. 39. The basis for the Clerk's refusal was that the equalization law was unconstitutional. The Illinois Court upheld the act and issued its mandate to the Clerk and subsequently the Attorney General filed a contempt action because of the failure to obey the Court's mandate. In the contempt proceeding the respondent defended on the ground of practical impossibility. He said that he had sent the tax books to the various collectors who refused to return them. The position that the Illinois Court took was that the respondent could not defend on the basis that he had by his own unlawful act made it impossible for him to obey the Court's mandate. The pertinent language in this case is as follows:

" * * * But the main object to the sufficiency of your answer is, that you are endeavoring to excuse your disobedience to a command of the court, by setting up your own previous disobedience to a command of the legislature. You are seeking to escape the consequences of one wrongful act, by pleading that you have committed another not less wrongful. This species of defense is, in our judgment, forbidden you by that universal principle of law which forbids a party to avail himself of his own wrong. This maxim lies at the very foundation of jurisprudence, and is applied alike in civil and criminal proceedings. The statute required you to do a certain act. You refused to do the act, and when the agencies of the courts are set in motion by the proper officers of the State to compel you to do it, you seek to escape obedience to their commands by alleging that you had so acted as to render their power ineffective, and at the same time make yourself safe in your disobedience, by consummating your illegal act before the court had spoken.

"'To allow this sort of defense to be made as a justifi-

cation for disobeying the peremptory writ, would be to set all law at defiance, and make the mandates of this court a by-word and a jest.

"Your duty was to extend this tax on the fifteenth of October, 1867, when the books were in your possession, so that the tax might have been collected by distress, or by the sale of the real property of the delinquents. The dilemma in which you are now involved, is the consequence of your failure to do this precedent act, which would have ensured the collection of the tax at the time provided by law. It would be unjust, therefore, should you be permitted to shield yourself from responsibility in this proceeding, you yourself having created the circumstances by which you were disabled from obeying the mandamus.

"The law under which this additional tax was imposed, had passed the legislature under all the forms of the constitution, and had received executive sanction, and became, by its own intrinsic force, the law to you, to every other public officer in the State, and to all the people. You assumed the responsibility of declaring the law unconstitutional, and at once determined to disregard it, to set up your own judgment as superior to the expressed will of the legislature, asserting, in fact, an entire independence thereof. This is the first case in our judicial history, in which a ministerial officer has taken upon himself the responsibility of nullifying an act of the legislature for the better collection of the public revenue — of arresting its operation — of disobeying its behests, and placing his own judgment above legislative authority expressed in the form of law.

"To the law every man owes homage, 'the very least as needing its care, the greatest as not exempted from its power.' To allow a ministerial officer to decide upon the validity of a law, would be subversive of the great objects and purposes of government, for if one such officer may assume infallibility, all other like officers may do the same, and thus an end be put to civil government,

one of whose cardinal principles is, subjection to the laws.

"Being a ministerial officer, the path of duty was plain before you. You strayed from it, and became a volunteer in the effort to arrest the law, and it was successful. Had the property owners, who were subjected to this additional tax, considered the law unconstitutional, they could, in the proper courts, have tested the question, and it was their undoubted right so to do. Your only duty was obedience. The collected will of the whole people was embodied in that law. A decent respect to them required that all their servants should obey it. Your disobedience being the cause of your inability to obey the mandamus, can not, as we have said, make a justification in this proceeding, and in full accordance with this view is the case of *The People ex rel. Dox v. The County Judge of Johnson Co. et al.,* 12 Iowa 237. * * * "

■ In the present case Hively made no move indicating a desire in good faith to comply with the Court's mandate. His defense of legal impossibility does not excuse him from performing the acts which he was then required to do. His late certification on January 16, 1959, was no less violative of 137-3-49 than his amending it on February 26, 1959, would have been. He had no right to set himself up as the judge of the validity of the course of conduct which was ordered. We hold, therefore, that his argument of "legal impossibility" is lacking in merit and must be rejected.

3. *Was Hively acting in good faith?*

■ The remaining contention that respondent was acting on the advice of counsel and that by reason thereof he acted in good faith, is no more meritorious than his efforts to place the blame on his predecessor. He was the responsible party. He had no right to disregard the law and the order of this Court merely because his counsel told him to do so.

■ For the reasons heretofore mentioned, the fact, if it be a fact, that Hively might have acted on legal ad-

vice, furnishes no excuse whatsoever and does not establish that his actions were not contemptuous and in good faith. 17 C.J.S. 52, 238, *Contempt,* 12 Am. Jur. 438-441, §§ 72 and 73, *Contempt,* and 30 A.L.R. 155.

A review of the record in this case and in No. 18,871 convinces us that Hively's conduct here in question was palpably and flagrantly contemptuous. The respondent from first to last was committed to the adamant policy which he continued until the last. It follows that the respondent must be and he is hereby adjudged in contempt of this Court in accordance with the prayer of the Attorney General's petition.

Jurisdiction of the cause is retained and the final disposition of the matter is deferred until Monday, September 28, 1959, at 9:30 A.M. The respondent is ordered to appear in person on that date at which time final judgment will be pronounced and other appropriate proceedings will be carried out.

MR. JUSTICE DAY not participating.