No. 8619.

FIRST NATIONAL BANK OF GREELEY *v.* PATTERSON ET AL.

1. TAX COMMISSION—*Increase . in Valuation—Discrimination.* An increase in the valuation of certain properties made by the county assessor does not require an increase in other properties of the same taxpayer, made by the commission itself. To omit it is not a discrimination.

So of a failure to make increase in the valuations made by the assessor in other counties.

2. *Taxation—Due Process of Law.* Where the statute authorizes a taxing board or other agency, meeting at specified times and places, to increase or decrease by such rate per cent., or amount, the aggregate valuation of properties made by the local authorities for the purpose of taxation, as will place such property on the assessment roll. at its full cash value, and requires such taxing board to complete its labors within specified dates, notice is afforded to all persons who may be affected by the action of such board; and a property owner who remains inactive until the work of the board is completed, and the tax laid, will not be heard to afterwards apply for a rebate.

3. —— *Illegal Tax,* may be recovered from the county, under Rev. Stat. Secs. 5750.

Sec. 5 of c. 134, Laws 1913 does not take away the taxpayer's right of action. ﹣ Its effect is to take from the county commissioners the power to refund the tax, without the approval of the tax commission, or the judgment of some court of competent jurisdiction that the tax is illegal.

4. NATIONAL BANK—*Failing to file a list of its shareholders* with the county treasurer, as required by Rev. Stat. sec. 5754, is liable for the tax assessed upon its stock.

*Error to Weld District Court, Hon. Neil F. Graham, Judge.*

Mr. H. N. HAYNES, for plaintiff in error.

Mr. CHARLES F. TEW, Mr. WALTER E. BLISS and Hon. FRED FARRAR, attorney general, for defendants in error.

*Statement of Facts.*

THE First National Bank of Greeley, as trustee for the holders of the shares of its capital stock, sought to prevent the defendant, as County Treasurer of Weld County, from collecting a portion of the taxes assessed upon such stock for the year 1913. The State Tax Commission intervened in the cause and demurred to the complaint. The defendant also demurred thereto, and both demurrers were sustained. Thereupon the plaintiff, declining to plead further, the cause was dismissed.

In substance, the complaint sets forth that the plaintiff bank, on June 11, 1913, delivered to the County Treasurer, in accordance with the provisions of § 5756 R. S. 1908, a sworn statement of the true condition of the bank, showing that:

"Its capital stock at par was _____ $100,000.00
Its accumulated surplus _____ 100,000.00
Its undivided profits _____ 38,895.56
Said three items added to its liabilities, viz.:
Circulating notes _____ 97,300.00
Deposits _____ 736,242.54

        The total of _____$1,072,438.10
was balanced by assets of plaintiff then appearing on its books as follows:
Loans and discounts _____ $576,741.46
U. S. bonds (par) _____ 100,000.00
Banking house _____ 25,000.00
Other real estate _____ 3,510.00
Bonds, warrants, etc. _____ 165,463.14
Cash and due from banks _____ 196,723.50
Redemption fund _____ 5,000.00

        A total of _____$1,072,438.10"

That in said list of assets of plaintiff its real estate, on which its banking house was constructed, was valued at approximately one-half it real value; that certain furniture, typewriters, etc., and choses in action were omitted from

said list, and certain of the items included in "loans and discounts" and "bonds, warrants, etc.," were valued greatly in excess of their real value; that such overvaluation exceeded any undervaluation of plaintiff's real estate and omission of the aforesaid items; that the capital stock of plaintiff consisted of 1,000 shares of the par value of $100.00 each, and had no fixed or settled market value; that the assessor, in the discharge of his duty, placed a value of $48,900 upon plaintiff's real estate; and upon all its personal property, or all of its shares of stock held by sundry individuals, exclusive of investment in real estate, $190,-100.00, or a total of $239,000.00; that prior to the meeting of the Board of County Commissioners of the county, as a board of equalization in 1913, the County Assessor, pursuant to the statute, made and transmitted to the Colorado Tax Commission an abstract of the real and personal property of the county assessed by him, aggregating a total of $37,214,710.00; that the assessment of other property, for said year, in the county, made by the Colorado Tax Commission, was $16,474,530.00; that thereafter the Colorado Tax Commission determined that the assessed valuation of property in the county, made and transmitted to it by the assessor, was below the full cash value thereof by 63%, which it ordered to be added thereto, and transmitted the same to the State Board of Equalization; that thereafter on the 22d day of October, 1913, the State Board of Equalization approved the action of the State Tax Commission, and ordered said raise of 63% upon the valuation of the real and personal property of the county as returned in the assessor's abstract, to bring it to its full cash value, but made no increase upon the property therein assessed by the Tax Commission; that on October 22, 1913, the State Board of Equalization, in writing, notified the assessor of the county of its action in the premises, and directed him to correct his assessment roll for that year by adding thereto said increase; and on the same day a like notice and direction were served upon him by the State Tax Commission;

that thereafter the assessor complied with the order of the aforesaid state taxing agencies, and changed his assessment roll to comply therewith, and on or about the first day of March, 1914, delivered to the defendant County Treasurer the tax list, with warrant for collection, whereon appeared the final assessment against plaintiff's scheduled real property, $79,710.00, and against "its personal property, $309,050.00"; that such assessment so extended was $149,760.00 in excess of the full cash value of plaintiff's property, and that of its stockholders; that as a result thereof an excess tax was extended on the tax roll for said year against "the personal property of plaintiff, or rather its stock held by its several stockholders," of $2,515.97; that the original assessments made by the assessor on other banks in Weld County were made upon the same basis as that upon plaintiff's bank, that is, "by assessing their real property according to his judgment, and extending on the assessment roll, as first prepared, as valuation of their personal property, the remainder, to make up full book value," and that the aforesaid raise by the state taxing agencies of 63% was applied to all such banks; that the assessors in other counties, in making up their original assessments, applied the same rule as applied by the assessor in Weld County, "in the original valuation of personal property of banks or of their shares," but the state taxing agencies did not make the same increase or raise therein as was made in Weld County.   On the contrary, in some counties such agencies made an increase upon the assessment made by the assessor of 40%, in others 3%, etc., while in other counties no increase whatever was made, and thereby caused an excessive and unjust assessment of plaintiff's property over that of like property elsewhere in the state, in violation of § 3 of Article X of the State Constitution; that the shareholders of plaintiff, for whom in this behalf it acts as agent and trustee, pursuant to the requirements of § 5754 of the Rev. Stat. of 1908, will be deprived of rights defined and protected by § 3 of Article X of the Constitu-

tion of Colorado, and by § 5219 Rev. Stat. of the United States, and by §§ 5591, 5753 of the Colorado Rev. Stat. of 1908, and of their property, without due process of law, and of the equal protection of the law, in violation of § 1 of Article XIV of the Amendments to the Constitution of the United States; that on the 29th day of April, 1914, pursuant to § 5 of "An Act in Relation to Revenue," etc., approved May 1, 1913, "plaintiff as agent and trustee of all its stockholders filed" with the Board of County Commissioners of Weld County its petition for abatement and rebate of said $2,515.97 of excessive tax, stating as grounds therefor, in substance, what has hereinbefore been alleged; that the assessor recommended to the Board of County Commissioners that the petition of plaintiff for the aforesaid abatement be allowed, and on the 4th day of May, 1914, the Board of County Commissioners "certified said petition with its approval thereof to the Colorado Tax Commission for its approval or disapproval"; that thereafter the Tax Commission returned said petition to the Board of County Commissioners with endorsement thereon of its disapproval; that plaintiff paid, in its own behalf, in full to the County Treasurer, the whole tax levied on its real estate for the year 1913, and as agent and trustee of its shareholders also paid to said treasurer the taxes for said year upon the value of its personal property as originally assessed by the County Assessor, "leaving as unpaid on the books of said County Treasurer $2,515.97 as tax on plaintiff's personal property, or on its shares of stock, with interest on one-half thereof at statutory rate from May 1, 1914, and on the other half thereof from August 1, 1914," the payment and receipt being made and given without prejudice to the rights of either party in the premises; that thereafter on the 25th day of August, 1914, the County Treasurer threatened to distrain certain personal property of plaintiff, to enforce collection of the balance of the aforesaid claimed taxes, and plaintiff believes that unless restrained by injunctive order, the treasurer will proceed to

collect the same by distraint; that plaintiff, as a national bank, is made agent and trustee for the owners of its shares of stock, in the matter of payment of taxes, and required to withhold dividends to the extent of taxes justly due, and, therefore, "has no adequate remedy in the premises save in a court of equity, to the end that multiplicity of suits may be avoided," and prays for temporary and permanent injunction, and "such other, further and different relief as to the court may seem just and equitable in the premises."

The bank, as trustee for its shareholders, brings the cause here for review on error and contends:

"a.  That by the trial court refusing it any relief, it was judicially denied the protection afforded by section 3, article X, of the Constitution of Colorado, to have taxes assessed, levied and collected upon a just valuation of all property, real and personal, and were thereby denied the equal protection of the laws guaranteed by section 1 of article XIV of Amendments to the United States Constitution.

b.  That it was denied the rights guaranteed by said sections of said constitutions and by section 5219 of Revised Statutes of the United States in not having taxes imposed on it based on a uniform rule upon the same class of subjects, because the valuation of its property, and that of other banks in Weld County, was upon an entirely different basis from that of banks located elsewhere in the state subject to the same state levy.

c.  That plaintiff in its complaint charges it had exhausted without avail every remedy afforded it of redress through administrative officers; it urges in argument it did seek administrative relief at the only time and in the only manner afforded it by statute, and that the veto by the Colorado Tax Commission of the recommendation in its favor by assessor and county commissioners precluded any possibility of aid except in the courts.

d.  That by the dismissal of the complaint and by denying the motion for new trial, the trial court did not give plaintiff the statutory right it has under section 21 of the

Code of Civil Procedure to have judicial determination of plaintiff's liability to defendant, County Treasurer, * * * .

e. That irrespective of the action being justly treated as one at law under section 21 of the Code, plaintiff was also entitled upon the facts to ancillary injunctive relief, denial of which, coupled with dismissal of its action at its costs, was reversible error under the Federal Constitution and said Federal statute."

Mr. Justice White delivered the opinion of the court:

After a careful consideration of the complaint, the points relied upon for reversal, and contention of counsel, in support thereof, we are of the opinion that the judgment of the trial court was proper, and the plaintiff in error has not been deprived of either a constitutional or statutory right, or suffered any wrong of which it can justly complain. The injustice and discrimination, if any, arise wholly from an alleged overvaluation of property for taxation purposes, enforced by action of the State Tax Commission and the State Board of Equalization. No claim is made of actual fraud or intentional wrong. The alleged overvaluation was the result of a flat increase ordered by the State Tax Commission, and by the State Board of Equalization, upon the aggregate value of all the property within the county, originally assessed by the assessor, and imposed by the aforesaid central tax assessing agencies, in strict conformity with the provisions of section 31 of the Act of 1911, chap. 216, p. 623. *Colorado Tax Commission v. Pitcher,* 56 Colo. 343, 365, 367, 138 Pac. 509.

The fact that the Tax Commission raised the aggregate valuation of the property in the county originally assessed by the assessor, and did not raise the value of the property therein which was originally assessed by it, does not constitute discrimination. The Tax Commission was authorized by law "to bring the valuation of taxable property to the legislative standard of full cash value." In making the valuation upon the property that it was authorized to assess, in the first instance, and increasing the value of that

originally assessed by the assessor, it discharged this duty; and when the State Board of Equalization approved the assessments so made, the assessment of the property was finally fixed. Although the state taxing agencies did not make the same increase or raise upon the several aggregate valuations returned by the different assessors, in other counties, as they made in Weld County, it does not constitute a discrimination of which plaintiff in error is in a position to complain. It concedes that it was cognizant of, and satisfied with, the assessment made by the assessor. But the law also made it cognizant of the fact that such assessment was subject to change by superior governmental agencies who were required to meet at certain places, on certain days, and complete their labors within designated dates. With full knowledge of the respective powers of these several boards to make corrections in assessments and adjustments in equalization, essential to bring about a complete and equitable assessment of all property within the state, it remained inactive until long after the tax was laid, when it applied for an abatement or rebate of the tax. The aforesaid tribunals were open to plaintiff in error prior to the laying of the tax, but it refrained from seeking relief therein, and may not now complain. *Colorado Tax Commission v. Pitcher*, supra, 368, 375.

The case is unlike *Cummings v. National Bank*, 101 U. S. 153, 25 L. Ed. 903. In that case the acts and agreements of some of the different assessing bodies brought the matter within the jurisdiction of equity, as clearly appears in the opinion, page 161. In fact, there were four different bodies, acting independently of each other, in regard to as many different classes of property in fixing the final valuation thereof for taxation purposes, and by agreement among some of them, certain classes of property were assessed at one-third of their actual value, other classes at six-tenths of their value, and still other classes at their true value. This, in substantial effect, constituted conspiracy and actual fraud, and there was no means of relief, as there is in this

state, through a supervisory board, with authority over all to finally fix values. The lack of such board is made an important factor in that case, page 159. Mere errors or excess in valuation, or hardship, or injustice of the law, or any grievance which can be remedied by application to agencies specially invested with power to act in the premises, either before or after payment of taxes, do not call for a court of equity to interpose by injunction to stay collection of a tax. *Bent County v. Santa Fe, etc.*, 52 Colo. 609, 125 Pac. 528.

In this state we have a system of assessment of property for revenue purposes peculiarly sane and sound. The local authorities have supreme power to cause equality of valuation upon the property of individuals within the counties; a Tax Commission, and a State Board of Equalization, have like power to take the aggregate returns from the several counties, and if they find that a county has had its property assessed too low, in reference to the standard of full. cash value, they may raise its valuation.

But apart from this, if the tax was not legally laid, plaintiff in error could, upon payment thereof, recover the same from the county under the provisions of § 5750 R. S. 1908. *Woodward v. Ellsworth*, 4 Colo. 580; *Hallett v. Arap. Co.*, 40 Colo. 308, 9 Pac. 678; *Bent County v. Santa Fe, etc.*, supra; *Singer S. M. Co. v. Benedict*, 229 U. S. 481, 57 L. Ed. 1288, 33 Sup. Ct. 942; *Union Pac. R. Co. v. Commissioners*, 217 Fed. 540, 133 C. C. A. 392.

The last case cited reached the United States Supreme Court (see *Union Pac. R. R. Co. v. Weld Co.*, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110), where that court, speaking of this section of our statute, said: "That the taxes were levied for state, school district, and town, as well as for county, purposes, is not material; for it is apparent from the Colorado statutes and decisions that the section covers broadly the whole of the tax that is found to have been erroneous or illegal, regardless of the purpose for which it was levied and placed on the county tax roll. And

it is also immaterial that the taxes were made a lien on the company's real property, for the lien would be effectually removed by paying them and suing to recover back the money."

The statute also eliminates any question of multiplicity of suits, should the plaintiff in error pay the tax exacted and thereafter be called upon by its shareholders to account for the same.   It did not file with the County Treasurer for the year a list of its stockholders, and the number of shares held by each, as required by § 5754 R. S. 1908.   By reason of this negligence, it became liable for the payment of the tax, and by express terms of the statute, subjected its lands to sale, and its moneys, goods and personal effects to distraint for the payment thereof.   *Waite v. Dowley,* 94 U. S. 527, 24 L. Ed. 181.   Therefore, in a single action at law under the statute, it could protect itself and its shareholders, for whom it stands as trustee in the premises.   In *Union Pacific R. R. Co. v. Weld Co.,* supra, it was contended that by the fifth section of chap. 134, S. L. 1913, section 5750 R. S. 1908, *supra,* had been repealed, or so modified and changed that the taxpayer no longer had the right to sue for and recover from the county an erroneous or illegal tax paid.   It was held that the question was not free from doubt, and as a ruling by that court on the question would neither settle it for the state court, nor be binding in an action to recover the tax if paid, equitable relief would be extended.   So it becomes necessary to determine the effect of the new section on the old section.   We are of the opinion that it does not substantially affect the continued existence of the right conferred upon the taxpayer to recover from the county an illegal or erroneous tax he has paid.   It may be conceded that the new section prohibits any voluntary refunding of taxes by the County Board of Commissioners, save in instances having the approval of the State Tax Commission.   But this in no sense takes away the right of the taxpayer given by the old statute to sue.   The true meaning of § 5750 is to impose a liability upon the

county in favor of a taxpayer who pays an illegal or erroneous tax, and a corresponding duty upon the commissioners, as agents of such county, to refund the same. The effect of the new section in no wise removes that liability, or deprives the taxpayer of his right to maintain a suit therefor, but only takes away the right of the commissioners, without first obtaining the approval of the Tax Commission, to refund the tax until it is "found" by judgment of a court of competent jurisdiction that the tax is erroneous or illegal, establishing the liability of the county. In other words, without the approval of the Tax Commission, it may not be "found," except by judgment of a court, that the tax is illegal or erroneous.

We see nothing in the record which requires a court of equity to extend relief to plaintiff in error. All the Justices concur, but Chief Justice Hill and Mr. Justice Teller desire to have it stated that they concur in the conclusions only. Our former opinion is withdrawn and this substituted therefor. The conclusions in both are identical and the application for rehearing will, therefore, be denied, and the judgment affirmed. It is so ordered.

Decision *en banc.*

Decided May 7, A. D. 1917. Rehearing denied December 2, A. D. 1918.