No. 18,871.

PEOPLE OF THE STATE OF COLORADO, EX REL. STATE BOARD
OF EQUALIZATION, ET AL. *v.* ALBERT R. HIVELY, ASSESSOR
OF ARAPAHOE COUNTY, ET AL.

(336 P. [2d] 721)

Decided March 4, 1959. Rehearing denied March 30, 1959.

50

Mr. DUKE W. DUNBAR, Attorney General, Mrs. PATRICIA H. MALOY, Assistant, for petitioners.

Mr. J. SHERMAN BROWN, Mr. ROBERT J. FLYNN, Mr. GEORGE LOUIS CREAMER, for respondents.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE section numbers which appear herein refer in every instance to Chapter, Article and Section and Sub-Section of the Colorado Revised Statutes 1953. Reference to the "assessor" or to "respondent assessor" means the County Assessor of Arapahoe County. We shall refer to the State Tax Commission as "Commission" and to the State Board of Equalization as the Board. There has been a substitution of Albert R. Hively for John Balleydier, who at all times mentioned herein was Assessor of Arapahoe County.

The People of the State of Colorado have filed a petition herein seeking an alternative Writ of Mandamus addressed to the Assessor of Arapahoe County commanding the said assessor to make additions and corrections in the assessment roll of Arapahoe County for the year 1958 in order to carry out directions of the Commission and the Board. Relief is also sought against

the District Court in and for the County of Arapahoe prohibiting the continuation of a certain action No. 13,791 in that court in which the respondent, the assessor, together with residents of Arapahoe County, are seeking to set aside orders and directions of the Board and the Commission.

The allegations of the petition are that the assessor, acting pursuant to 137-3-42 and 137-6-30, submitted to the Commission his abstract of assessment for the County of Arapahoe for the year 1958 showing the valuation of property assessed by him and that the Commission, acting under 137-6-31, increased the valuation of real estate improvements in Arapahoe County in the sum of $10,000,000. Thereafter, the Board, acting under Article X, Section 15 of the Constitution and Section 137-7, convened on September 15, 1958, for the purpose of equalizing the real and personal property assessments and setting the state mill levy; that at said meeting the abstracts of assessment of all of the counties of Colorado, together with the report of the Commission, were presented and considered, and that during said meeting the Board considered protests presented and heard all persons appearing and desiring to be heard, including the assessor and taxpayers of Arapahoe County who appeared to protest the action of the Commission. That on September 22, 1958, the Board met and received further data from the Commission and the Arapahoe County delegation, following which a motion was made and unanimously carried that the action of the Commission be approved and that the assessed valuation for Arapahoe County be fixed at $153,523,910, and that the respondent assessor and the Commission be directed to fix the valuation in the amount set by the Board.

It was further alleged that on September 30, 1958, there was transmitted to the respective County Clerks and Recorders and County Assessors of Colorado, including the Clerk and Assessor of Arapahoe County, a notice setting forth the mill levy and the assessment

for each county, including Arapahoe, as required by 137-7-7. The petition further alleges that the assessor, although fully informed of the action and decision of the Board, refused to comply with the requirements of 137-3-47 and that in lieu of certifying the valuations directed by the Board and the Commission, the respondent assessor on September 25, 1958, notified the Board of County Commissioners of Arapahoe County that the "State Board has ordered an increase, but no official notice has been received."

On September 29, 1958 (according to further allegations), respondent assessor caused to be served on the members of the Board a "Notice of Appeal" of their decision increasing the valuation and on September 29 a civil action (No. 13,791) was filed in the District Court in and for the County of Arapahoe wherein the assessor and the Board of County Commissioners of Arapahoe County, together with T. W. Anderson and L. E. Clarida, property owners — objectors, appeared as plaintiffs and sought relief in the nature of certiorari, declaratory judgment and temporary and permanent injunction. On the basis of this complaint, the district court issued, ex parte, an Order to Show Cause and to Certify the Record on or before October 8, 1958. The complaint, together with the Order, was served and the Board and the Commission filed a Motion to Dissolve the Order to Show Cause, which motion raised the question whether the district court of Arapahoe County had jurisdiction to hear the controversy under 137-7-5. The District Court of Arapahoe County ruled that 137-7-5 gave it jurisdiction to hear the cause.

The petition finally alleges that the District Court of Arapahoe County lacked jurisdiction to proceed for the reason that 137-7-5 permits appeals only as to original assessments wherein the Board finds that the assessor has been delinquent in his duties by omitting taxable property from his abstract or by palpably and manifestly assessing property below its true value or by fail-

ing to verify his return, and where the delinquency operates as a fraud upon state revenues; that the complaint of respondents does not bring the case within this provision, but alleges irregularities in the proceedings before the Commission and the Board; that the Commission and Board acted pursuant to 137-6-31 and Article X, Sec. 15 of the Colorado Constitution.

The petition further alleges that the Board and the Commission acted within the jurisdiction conferred by the Constitution and the Statutes of Colorado and that the respondent assessor has no standing to obtain a review of the decision in the district court.

A further allegation is that following the institution of the suit in the District Court of Arapahoe County the County Commissioners of Arapahoe County petitioned the Commission for permission to increase the mill levy for county purposes, basing such request on the valuations originally submitted by respondent assessor. Further allegations are that unless relief is here granted the Arapahoe County levies will be based on the assessor's original assessment and future mill levies set by the Board will be imposed on the original assessment of the respondent contrary to the Constitution and the Statutes of Colorado.

The action in the district court, No. 13,791, with respect to which the prohibition is here sought, alleges in substance that during the year 1958 the Commission made appraisals of houses in Arapahoe County called the "Broadway Estates" following which said Commission recommended lowering the classification of the said homes; that the reclassification of these and similar homes resulted in a decrease of valuation of $3,006,760; that other reclassification and adjustments resulted in decreases of $784,250 and $2,288,000 and that allowable depreciation resulted in a decrease in valuation of $1,688,191, annexation to the City and County of Denver resulted in a reduction in the total valuation in the amount of $14,710; that the decreases were offset by

valuation of new improvements amounting to $7,831,010. It is alleged that there was no basis on which greater valuation (than that fixed by the assessor) can be assessed. It is also alleged that the Arapahoe County Commissioners completed their function as a Board of Equalization and that the assessor has submitted the abstract required by law, but that the Commission failed to examine this without delay as required by C.R.S. 137-3-44 and failed to act upon it for a period of 5 weeks; that on September 8, 1958, said Commission notified the assessor that the valuation had been increased on real estate improvements in the amount of $10,000,000. The complaint further alleges that the increase in valuation ordered by the Commission was not in accordance with the requirements of 137-6-12, which section required that there be reappraisement, that the increase in valuation was made by the Commission without the giving of a notice or the holding of a hearing and that this increase, affecting as it does individual property owners, is invalid and contrary to Sec. 137-6-12 (7), and in violation of the Fourteenth Amendment to the Constitution of the United States and Article II, Sec. 25 of the Constitution of the State of Colorado.

Further allegations are to the effect that the Board acted invalidly in approving the increase in valuations of the Commission in that information and data supporting the increase in valuation was not submitted by the Commission as required by 137-6-32. The procedure of the Board is also alleged to have been irregular and invalid in that during the hearing (on September 15, 1958) the Chairman ordered the assessor and the taxpayers to confer with the Commission to ascertain the basis of the increase. It was alleged that such a meeting was held, but that no facts were provided and that on September 22, 1958, the Board reconvened and at least part of their session was held in private, contrary to 137-7-2; that no records were kept of the private proceedings. It is alleged that the exclusion of the participants from the

meeting violated the statute (137-7-2) and also constituted a violation of the Fourteenth Amendment of the Constitution of the United States and Article II, Sec. 25 of the Constitution of Colorado.

Complaint is also made that following its "secret session" the Board adopted a Resolution adding the sum of $10,000,000 to the assessed valuation in Arapahoe County. It is said that timely notice of this action was not given to the assessor and the other plaintiffs in Civil Action No. 13,791. It is alleged that the Order of the Board is invalid because not in accordance with 137-7-5, that this is the only authorization for correcting assessments. It is concluded that the action of the Board is in excess of authority and in abuse of its discretion.

Other irregularities complained of in action No. 13,791 are: that Sections 137-7-1 and 137-7-7 prescribe the time during which the Board shall meet and act. It is alleged that a statement of changes in assessments was not transmitted to the assessor within the time required by these sections and that for this reason the increase is invalid; that because of the delay in transmitting the increase to the assessor he was unable to comply with 137-3-51 requiring him to certify to the Clerk of each city and town in his county and the County Superintendent of Schools the total valuation of the assessable property for that area or school district, and that he was compelled to certify in accordance with his original assessment.

Further allegations are to the effect that under Article X, Sec. 15, of the Constitution, defining the duties of the Board, that body lacks power to increase the total overall valuation of the property in the state; that in the event of an increase in valuation in one county there must be a corresponding decrease in other counties.

Essentially, this is a jurisdictional conflict between officers of the County and of the State. In resolving this deadlock we are called upon to determine the following comprehensive questions.

1. *Whether the Commission and the Board are authorized under the Constitution, the statutes and the decisions of this Court to determine that there should be lump sum or percentage increase in the total valuation of property within a County even though this has the effect of increasing the aggregate valuation of property in that County and in the State as a whole.*

2. *Were the Commission and the Board exercising their jurisdiction in accordance with the requirements of statutes, the Constitution of the United States and the Constitution of Colorado?*

We hold that both questions are to be answered in the affirmative.

Discussion of the specific points raised by the respondents, components of the general questions propounded above, will remove jurisdictional doubts and ambiguities and will avoid future conflicts.

1. *Validity of Tax Commission Action.*

On September 8, 1958, the Commission advised the assessor that it had examined his abstract of assessment for 1958 and had determined that the total assessed valuation of real estate improvements should be increased from $116,756,090 to $126,756,090. Respondents contend that this action of the Commission was illegal and void because it was not attended by reappraisals and the giving of notice and hearing to the taxpayers affected. They rely on Sections 137-6-12 (6) and (7). The argument is that these provisions preclude summary increases.

Section 137-6-12 (6) provides in substance that:

"Whenever in the judgment of the tax commission property in any county * * * has not been assessed at its true and full cash value the commission may make a reappraisement."

This subdivision then sets forth the procedure to be followed in the event of reappraisement.

Sub-section (7) supra provides that:

"The commission may raise or lower the assessed

value of any real or personal property, first giving notice to the owner or owners thereof, fixing a time and place for hearing * * *."

■ These sections do not apply in the instant proceeding because they relate to the *assessing* function of the Commission. The whole of Section 137-6-12 defines the authority of the commission relative to *individual* assessments and with respect to its supervisory authority over the County Assessors and County Boards of Equalization in the discharge of its mission to bring about a uniform system of assessment throughout the state. This construction is supported by Sections 137-6-13 through 137-6-15, all of which pertain to the individual assessment problem.

However, the Commission was in the case at bar performing its *equalization* function and was acting pursuant to Section 137-6-31.

This latter section provides:

"On or before the second Monday in September, the commission shall determine whether the real and personal property of the several counties in the state shall have been assessed at its true and full cash value and if, in the opinion of the commission, the real or personal property within any county in the state as reported by said county assessor to the commission is not on the assessment roll at its true and full cash value, the commission shall determine the increase or decrease in the valuation of such county by such rate per cent, or such amount as will place said property on the assessment roll at its true and full cash value."

■ This authorizes the commission to order horizontal increases or decreases in an aggregate flat sum or of a percentage rate. It applies to all property within a county and when exercising this function the commission is not required to make reappraisals, to give notice to or hold hearings for affected taxpayers. It performs in this role in September long after the determination of individual assessments. This section would be mean-

ingless if the commission were required to notify each and every taxpayer in the county and hear complaints with respect to the increase in valuation. It could not complete such hearings in a year, much less by the third Monday in September.

 Moreover, the courts have held that the failure to provide a hearing and a review in connection with this jurisdiction does not constitute a deprivation of property without due process of law.

The reasoning is:

a. That in connection with the central equalization power, an essential part of the ad valorem property taxing process, it is absolutely impractical to furnish a hearing.

b. A hearing for each member of the public is not necessary where public action affects every citizen's rights.

c. There is no disturbance of equality between taxpayers.

d. The increase in valuation does not necessarily affect the amount of tax since the mill levy is a relative factor which is geared to the valuation and the amount of revenue necessary for state and county purposes.

e. Statutory remedies have been provided to protect individual rights.

These exact questions have been decided in *Colorado Tax Commission v. Pitcher,* 56 Colo. 343, 138 P. 509, an original mandamus action filed by the Commission to compel the Assessor of Denver to comply with an order of the commission which had horizontally increased the valuations of Denver forty per cent. The Assessor claimed that the order was invalid because appraisals had not been made and because affected taxpayers were not given an opportunity to be heard. The court rejected this argument and on pp. 366, 367 discussed in detail the difference between the two procedures of the Commission. It was concluded:

"This view is further fortified by other provisions of

the act. Subdivision 7 of §13 provides for the giving of notice to the owner of property and fixing a time and place for a hearing. This notice, however, applies only in cases where the tax commission is exercising its power under the procedure prescribed by subdivision 6 of the section, and does not apply when a horizontal increase or decrease by a designated rate per cent or amount to be added is ordered by the tax commission under the provisions of §31. This is conceded by all parties to the controversy, and it is upon this assumption that respondent has interposed, as a defense, the constitutional provisions inhibiting the taking of property without due process of law."

Other decisions of this Court have given a similar construction to the statutes in question. *People v. Pitcher,* 61 Colo. 149, 156 P. 812; *First National Bank of Greeley v. Patterson,* 65 Colo. 166, 172, 173, 176 P. 498. See also *Bohen v. Board of County Commissioners of Lake County,* 109 Colo. 283, 124 P. (2d) 606.

In the latter case, the Tax Commission sought to increase the value of *individual* property under its equalizing power, the converse of the present situation. The distinction was recognized by the Court:

"The Tax Commission claims to have acted under section 175, chapter 142, '35 C.S.A. That section does not support it and such of its language as seems to do so is directly negatived by the limitation on its remedial action to a per cent increase or decrease 'in the valuation in such county.' We have held that the Tax Commission is so limited, and that as to classes of property and ommissions from the rolls its authority ends when the county board acts. *First Nat. Bank v. Patterson,* 65 Colo. 166, 174, 176 Pac. 498; *People ex rel v. Pitcher,* 56 Colo. 343, 138 Pac. 509."

In commenting on the power of the general assembly to authorize the Commission to perform a central, supervisory assessing function, the Court in *Commission v. Pitcher,* supra, 56 Colo. at 362, said:

"In the light of these decisions, and bearing in mind the constitutional duty imposed upon the general assembly to provide by law for a state tax sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year, the constitutional limitation of the rate of taxation on property for state purposes, the necessity for uniformity, and the constitutional mandate that taxes shall be levied upon a plan which shall secure a just valuation for the purposes of taxation, it would seem that there should be no doubt as to the power of the general assembly to create a central body, and empower it with the duty of performing those functions of assessment, in each county, essential to bring the property therein for taxation purposes to its full cash value, the standard by it prescribed to insure a just valuation. Such law would in no wise interfere with the constitutional powers of the state or county boards of equalization, and would be, in effect, the same power previously conferred by statute, §38, G.L., supra, upon county boards of equalization."

In the instant case, the Commission in making the increase was performing its equalization function, and we are constrained to hold that it was not required to reappraise the property, give notice, and hold hearings in order that its action be valid.

2. *Validity of Action of the Board of Equalization.*

Respondents contend that the action of the Board in adopting the increase in valuation which had been found by the Commission acted without jurisdiction. They contend that Section 137-7-5 is the exclusive procedure for correcting assessments. This section provides:

"If in the opinion of the state board of equalization upon satisfactory information submitted any county assessor has omitted taxable property in his county from the abstract of assessment, or has assessed the property in his county palpably and manifestly below its true value, or has failed to verify his return, and if said state board of equalization is likewise of the opinion that such

delinquency operates as a fraud upon the state revenues, and that such revenues will be seriously impaired thereby, then the state board of equalization, upon reasonable notice to the assessor and after summary hearing, shall require the delinquent assessor to forthwith make such corrections and additions to the assessment as will make the same in accordance with the statutes unless the board also further finds that said erroneous assessment was willfully made, in which case proceedings shall be had as provided in section 137-7-6.

"Provided that in such case before any such corrections or additions to said assessment shall be required, if desired by the assessor, he may have an appeal from the decision of the state board of equalization to the district court of the county of which he is the assessor, which appeal shall be taken as appeals are taken from the boards of county commissioners, and shall be heard summarily."

Respondents argue that the procedure prescribed by this section was not observed. They maintain that the Board failed to give notice to the Assessor and to conduct a hearing before ordering him to correct his assessment. The failure, they contend, to find the enumerated deficiencies and to conclude that there had been a fraud upon state revenues precluded the Board altogether from changing the assessment. They also argue that in any case involving a change of assessment there is a right to district court review in the assessor's county.

This section authorizes the Board to act in specific areas for the purpose of correcting particular deficiencies in the assessor's abstracts of assessment. This was the construction given in *City and County of Denver v. Pitcher,* 54 Colo. 203, 129 P. 1015, which was an action by Denver and the Commission against the Assessor of the City and County of Denver seeking to enjoin him from making a reduction of valuations amounting to 10% following completion by him of his assessment and certification by the Board to him. In holding that an

assessor is powerless to make such a reduction and that the assessor is not entitled to a review in such a case, the Court determined that the above quoted section of the statutes applies only where a change is made in the *original* assessment for one of the reasons specifically enumerated in the statute.

In commenting upon the true meaning of the statute in question, the Court said:

"Counsel for defendant contend that a statutory remedy is provided, and that, therefore, the actions at bar cannot be maintained. This contention is based on section 5636, R.S., which provides that if, in the opinion of the state board of equalization, any county assessor has assessed the property of his county manifestly below its true value, that then the board, upon reasonable notice to the delinquent assessor, may require him to make it conform with the statutes. In our opinion, this section does not apply to an assessor who is making a horizontal reduction in a completed assessment, but covers a case where the valuations of property assessed, as originally returned and from which the abstract of assessment is compiled, that is lodged with the state auditor, when it appears that such assessment does not, for any of the reasons enumerated in the section, comply with the statute."

The Board was not proceeding under this section and the complaint fails to lay the jurisdictional background which would entitle respondent assessor to a court review thereunder.

■ The Board is a constitutional body provision for which is made in Article X, Sec. 15 of the Constitution of Colorado. This section provides:

"There shall be a board of equalization for the state, consisting of a governor, state auditor, state treasurer, secretary of state and attorney general. The duty of the said board of equalization shall be to adjust, equalize, raise or lower the valuation of real and personal property of the several counties of the state, and the valua-

tion of any item or items of the various classes of such property.

"There shall be in each county of this state a county board of equalization, consisting of the board of county commissioners of said county. The duty of the county board of equalization shall be to adjust, equalize, raise or lower the valuation of real and personal property within their respective counties, subject to revision, change and amendment by the state board of equalization. The state board of equalization and the county board of equalization shall equalize to the end that all taxable property in the state shall be assessed at its full cash value and also perform such other duties as may be prescribed by law; provided, however, that the state board of equalization shall have no power of original assessment."

In performing this equalization function, the Board is authorized to "adjust, equalize, raise or lower the valuations of real and personal property * * *" In its function of equalizing valuations, it does not follow the procedure prescribed in Section 137-7-5. In such a proceeding Section 137-7-8 is applicable. This section provides:

"It shall be the duty of the state board of equalization to examine the abstracts of assessment as submitted by the state tax commission. The state board of equalization shall forthwith examine the abstract of assessment of each county as submitted by the state tax commission and make a record of its action on the abstract of each county and certify the same to the county assessor, and the county assessor shall forthwith add to or deduct from each tract or lot, and its improvements, of real property and all personal property in his county the required per cent, or amount on the valuation thereof as it stands after it has been equalized by the state board of equalization, adding or deducting in each case any sum less than five dollars so that the value of any separate tract or lot and its improvements shall be ten dollars or some multiple thereof."

Thus, when the Board is performing its equalization function it is not required to give a specific notice and hearing.

█ We conclude that Section 137-7-5 does not apply and that the district court erroneously held that it serves to vest it with jurisdiction to review the order of the Board generally increasing the valuation of the county.

3. *Constitutional Validity of Equalization System.*

█ It is contended that if the statutes are construed so as to allow increases or decreases to be made by the Commission and the Board, without affording the individual taxpayer a notice, hearing and judicial review of the action taken, that the statute is contrary to due process of the state and federal constitutions. This argument questions the legality of the entire equalization system.

It is at once manifest that it would be impractical and impossible to hold individual hearings following the giving of individual notices at the equalization stage of the proceedings. If time would allow it, it would nevertheless defeat the system, the purpose of which is to equalize valuations on a statewide basis. The individual taxpayer has been given an opportunity to be heard and to have a review with respect to his own property valuation at the county level. The taxpayer has a right to be heard before the Board and is entitled to a court review (137-3-38).

The equalization system is a traditional part of our system in Colorado, and since 1914-1916 has had full recognition. Its validity was determined in *Tax Commission v. Pitcher,* supra. The discussion of this very issue is fully treated at pp. 368-373 of 54 Colo. The holding there is that the exercise of the equalization power does not constitute a violation of pertinent provisions of the Constitutions of Colorado and of the United States.

This decision continues to stand for the proposition that the equalization system (and Section 137-6-31) is not in conflict with Article II, Sec. 25 of the *Constitution*

*of Colorado.* It was also held in a companion case that an *individual taxpayer* could not, under circumstances such as those at bar, establish enfringement of his constitutional rights. This was in *Board of Equalization v. Bi-metallic Investment Co.,* 56 Colo. 512, 138 Pac. 1010. Both of these decisions were reviewed and affirmed by the Supreme Court of the United States in *Bi-Metallic Investment Co. v. Colorado,* 239 U.S. 441, 36 S. Ct. 141. The decision in this case disposes of the application of the federal constitution to the issues here raised. The Supreme Court *per* Justice Holmes set forth the issue as follows:

"The plaintiff is the owner of real estate in Denver and brings the case here on the ground that it was given no opportunity to be heard and that therefore its property will be taken without due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States.

In holding that this was not such a violation the Court declared:

"For the purposes of decision we assume that the constitutional question is presented in the baldest way — that neither the plaintiff nor the assessor of Denver, who presents a brief on the plaintiff's side, nor any representative of the city and county, was given an opportunity to be heard, other than such as they may have had by reason of the fact that the time of meeting of the boards is fixed by law. * * *"

The Supreme Court further reasoned and concluded:

"Where a rule of conduct applies to more than a few people it is impractical that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex

society, by their power, immediate or remote, over those who make the rule. * * *"

The language of Justice Holmes is fully applicable to the present case at bar. Acceptance of Respondents' thesis, involving as it does voiding of Section 137-6-31, would mean a return to nineteenth century conceptions of the taxing power and overturn of the intervening holdings. Quite apart from our conviction that this would result in a disruption of the entire ad valorem taxing system and would require a holding that Article X, Sec. 15 of the Colorado Constitution is itself unconstitutional, we are persuaded that the instant exercise of jurisdiction is valid.

The system is logical, comprehensive, integrated and the several provisions of the statutes are interdependent. To disjoint an essential part of this body of law would disrupt the entire scheme and no justification for this drastic step has been presented.

For a comprehensive picture of this procedure see *Galland, Chronological Steps in the Assessment, Levy and Collection of the Colorado General Property Tax,* 17 Rocky Mountain Law Review 244, 4. *Right of Board of Equalization to Order Aggregate Increase.*

Respondents allege in Civil Action No. 13,791 that neither the Commission nor the Board has the power to assess property and thus they lack power to increase the aggregate valuation of property of the entire State—that the Board, in equalizing valuations, is limited to the framework of total valuation and consequently if the value of one county is increased the value of another must be correspondingly decreased. Respondents argue:

"Neither the Tax Commission nor the Board of Equalization has any power to *Assess,* and the Board of Equalization has only the power to Equalize.

"That is, while the Board of Equalization may in some cases, upon proper hearing, and upon proper proof, raise the assessment, or lower it, in particular counties, it must work within the framework of the total assessment

as submitted by the Assessor, and any increase over that total amount is void, as in excess of the constitutional authority of the Board.

"So it is held in the landmark case of PEOPLE ex rel. v. Lothrop, 3 Colo. 428 (1877), in which the State Board of Equalization purported to raise the entire amount of the assessment for the state, pro-rating the increase among the counties, which the Court held was outside its constitutional power."

They allege (in case No. 13,791) :

"VI-5. That the effect of the action of the Board of Equalization has been merely to increase the aggregate value of property for assessment purposes by $10,000,-000.00 above that aggregate certified by the assessors, without changing or purporting to change, or finding any error in, any item or items of the various classes of such property, directly in the face of the constitution of the State of Colorado and the decisions uniformly interpreting it since the foundations of this State."

The case relied upon to sustain this thesis is *People ex rel. v. Lothrop*, 3 Colo. 428 (1877). It was there declared that the Board has a right to "adjust and equalize the valuation of real and personal property among the several counties of the State."

The conclusion of the Court in *People v. Lothrop,* supra, is summarized in the opinion as follows: (3 Colo. 466.)

"Looking then to the provisions of the Constitution and the statutes, we are clearly of the opinion that the power to fix and determine the valuation of taxable property is lodged by them in the assessor and the board of county commissioners of the several counties of the State, and that when they have under the law performed this duty and exercised this power, that the sum of the valuations of the several counties so by them found must be taken as the aggregate valuation of all the property in the State, and is conclusive and final as against the State board of equalization. The State board may, for

the purpose of adjusting and equalizing, increase the aggregate valuation of one county, and decrease the aggregate valuation of another, but they have no power to increase the sum of all the valuations of the several counties of the State. That aggregate valuation has been found for them, and fixed by the authority and in the mode prescribed by the law."

Counsel for Respondents concede that the Constitutional provision which defines the duties of the Board has been changed since the *Lothrop ruling*. This provision now reads:

"There shall be a board of equalization for the state, consisting of the governor, state auditor, state treasurer, secretary of state and attorney general. The duty of the said board of equalization shall be to adjust, equalize, *raise* or *lower* the valuation of real and personal property *of the* several counties of the state, and the valuation of any item or items of the various classes of such property." (Emphasis supplied.) (Article X, Sec. 15.)

Respondents claim that this change in language did not effect a change in meaning, and did not succeed in overcoming the Lothrop limitations. In substance they also argue that the amendment must not be construed as having effected a change because this would result in the Board's having excessive power. They say in any event "the Board of Equalization, and the Tax Commission is manifestly necessary (sic); that the hopes once had for the operation of the Petitioners Commission and Board have dimmed entirely, and as indicated by the reports now submitted to the General Assembly, they function hardly at all; * * * "

The policy arguments must, of course, be disregarded. These are questions for the General Assembly and the People to determine. As to whether a change was in fact effected by Article X, Sec. 15 supra, we feel that it is manifest that the amendment was one of substance, and this was the ruling in *People v. Pitcher*, 61 Colo. 149, which we shall presently discuss. However, *People*

*v. Lothrop* actually lost its authoritativeness before the constitutional provision was even amended. In *Tax Commission v. Pitcher*, 56 Colo. 343, a majority of the Court distinguished it so as to destroy its effectiveness. Although the case recognized that the *Board* could not increase the assessed value of property within a county (without at the same time making a corresponding decrease) it at the same time upheld an increase of 40% applied to Denver County on the theory that the Tax Commission *did* have the power to make original assessments. It is scarcely surprising that one of the dissenting judges, Gabbert, noted that the Lothrop case was thereby overruled:

"With due deference to my learned associates, I submit that to uphold the action of the board necessarily overrules the Lothrop case and results in amending the fundamental law — a power which the people alone can exercise."

Subsequently it was held in *In Re Questions of the Governor*, 55 Colo. 17, 123 Pac. 660, that the General Assembly had taken the power of original assessment which had been in the Board and had vested it in the Commission. This was the posture of the rule when Article X, Sec. 15 of the Constitution was amended and broadened.

*People v. Pitcher*, 61 Colo. 149, held that the amendment authorized the Board to increase the valuation within a county. It held that the Board "may raise the assessment on property or any part, parcel or class thereof." This involved the validity of an increase of value affecting certain classes of property within the county in the aggregate amounting to $55,408,952.00. The question was raised whether the Board had the power to raise or lower the valuation of any part or parcel whatsoever to bring such property to its true cash value. A comparison of the old and new versions of Article X, Sec. 15 was made and the Court concluded that the result of the amendment was to vest in the

Board the authority to increase valuations, including the value of certain classes, and held, speaking through Mr. Justice White, who had said in *Tax Commission v. Pitcher,* 56 Colo. 343, and in *In Re Questions of Governor,* 55 Colo. 17, that the Board lacked power to increase valuations in the aggregate and declared:

"Under this constitutional amendment it is clear that the State Board of Equalization is the final arbiter in fixing values upon property which has been originally assessed for the purposes of raising public revenue. It is expressly made its duty to adjust, equalize, raise or lower the valuation of real and personal property of the several counties of the state, and the valuation of any item or items of the various classes of such property. It will be observed that both the constitutional and statutory duties previously existing in the several county boards of equalization, whereby they equalized the assessments in their respective counties as returned by the county assessors, have now become constitutional duties, but their action in that regard is 'subject to revision, change and amendment by the State Board of Equalization.' Moreover, the State Board of Equalization and the County Boards of Equalization are expressly required to equalize 'to the end that all taxable property in the state shall be assessed at its full cash value.' Formerly the County Board of Equalization could equalize only between the tax-payers of the county, and the State Board of Equalization could equalize only to the end that the ratio between the counties should be just. The County Board of Equalization is now expressly authorized to raise or lower the valuation of any property, and the State Board is not only authorized to 'revise, change and amend the action of the County Board' but also to raise or lower 'any item or items of the various classes' of such property. Clearly items of a class may include the whole class, and if a board is given power to act with reference to any item of a class or items of classes, it possesses the power to act with reference to the whole

class. The conclusion is, therefore, inevitable that the State Board of Equalization may raise the assessment upon property, or any part, parcel or class thereof which has been originally assessed for the year, by any of the agencies authorized to make such assessments, to its full cash value, since, otherwise, it has not performed its constitutional duty."

The sole dissenting opinion was that of Justice Teller. However, his disagreement was with the part of the decision which allowed the Board to increase classes of property within the County. But even this opinion conceded that the Board had power to increase values in their entirety:

"Considering these changes in a section which had been held to give no power to change valuations except in equalizing among the counties, it appears that the purpose was to authorize the board to change the aggregate of the county assessments; in other words, to give the board the power which was denied to it by the ruling in *People v. Lothrop,* supra."

We are unable to agree with counsel for the respondents that the part of the Lothrop decision which prohibited the Board's increasing valuations in the aggregate is still law in this state.

■ It is not, however, necessary for this Court to overrule it now. This was accomplished long ago, and the only reason for the existence at present of any semblance of confusion on the subject stems from the fact that it was not expressly overruled. This was undoubtedly because the Court felt that such an expression was superfluous. It is also manifest, however, that we could not now adhere to the *Lothrop rule* without disinterring and revitalizing it and at the same time performing surgery on the body of law which has grown up since its demise. We can not do this, but must give effect to the unambiguous authorization in Article X, Sec. 15 of the Constitution which empowers the Board to increase valuation as it did in the instant case.

5. *Jurisdiction of the District Court.*

(a) May the County Assessor defy the order of the State Board of Equalization increasing assessed valuation and act upon the assessments submitted in his original abstract and seek the aid of the district court to further his objective; and (b) will mandamus lie to compel him to do his duty? The Court in *People v. Pitcher*, 61 Colo. 149, ruled no and yes. It held that the duties of the County Assessor, once his abstract had been submitted, are purely ministerial. The Court said (thereafter) his only concern is to see that the mandate proceeds from competent authority and said: (61 Colo. 157.) .

"After respondent had completed his assessment and submitted his assessment roll to the County Board of Equalization — §5658 R.S. 1908 — and transmitted his abstract of assessment to the Colorado Tax Commission — §30, p. 622, S.L. 1911 — his *quasi* judicial functions were ended, and his duties thereafter to be performed were purely ministerial, and that which is subsequently done by other boards, with jurisdiction to act in the premises, cannot be changed or questioned by him — *Denver v. Pitcher*, 54 Colo. 203, 224, 225, 129 Pac. 1015; *Colo. Tax Com. v. Pitcher*, 56 Colo. 343, 383, 138 Pac. 509; §33, p. 623, S.L. 1911; Cooley on Taxation (3d ed.), p. 1359.

"Indeed, the rule seems universal that 'when mandamus is resorted to in order to compel the assessment or collection of taxes the respondent may defend upon the ground of satisfaction, impossibility, or want of jurisdiction. But it is not a good return to plead irregularities in prior proceedings, another remedy, or a custom not authorized by law.' 13 Encyc. of Plead. & Prac., p. 743.

"It is the imperative duty of a ministerial officer to obey the act of a tribunal invested with authority in the premises directing his action; not to question or decide

upon its validity. This applies with the same force whether the direction be embodied in a legislative act or in the pronouncement of a governmental agency invested with power in the premises. The maxim lies at the very foundation of jurisprudence, and without its observance government would cease to exist."

Again at page 162, the Court said:

"The respondent herein has no more interest in that which some other tribunal did within its jurisdiction relating to the matter of fixing values for the purposes of taxation than the treasurer. The treasurer, upon receiving a warrant from the proper authorities to collect the taxes, is under the necessity of rendering obedience thereto and may not question the regularity of the proceedings resulting in the warrant. It is equally true that if the State Board of Equalization has jurisdiction, as held by the trial court, and actually made the raise it did, its judgment constituted a warrant which the respondent was bound to obey."

 Thus the Assessor here had no more standing to question the validity of the action of the Board than a lower court has to question the validity of the mandate of a reviewing court. He was obligated to carry out the mandate of the Board. There is *no* legal justification for his defiance and the district court lacked jurisdiction to hear the case. It follows that writs of mandamus and prohibition are here appropriate.

6. *Alleged Irregularities Before the Board of Equalization.*

Respondents argue that the Board failed to comply with the applicable statute, Section 137-7-2 and Section 137-6-32, and the conduct of the Board was also in violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States. The specific complaints can be summarized as follows:

a. That the Board failed to have its hearing in public. On September 22, 1958, the Governor adjourned the hearing and went into secret session after which he an-

nounced the decision of the Board to adopt the increased assessment applicable to Arapahoe County.

b. That a full record of the proceedings was not made and testimony was not taken.

c. That no data was submitted to the Board by the Tax Commission as required by Section 137-6-32.

d. That at the first meeting of the Board on September 15, 1958, the Governor adjourned the meeting and ordered the members of the Commission to meet with the participants from Arapahoe County, respondents here, and report back to the Board the results of this conference. That this procedure is highly irregular and not in accord with the hearing requirements of the statute.

Analysis of the record and the applicable statutes and case law does not establish that the points raised are meritorious. The petition, the exhibits and the complaint of the respondents indicate that a full hearing was had. The Board had before it the various abstracts and reports, and it heard the respondents on two different occasions. The Commission also conferred with the respondents. The fact that the Commission did not agree with the respondents does not mean that the conference was in law a nullity.

It is said that the Board did not have data from the Commission, but it did have the abstracts, together with the determination of the Commission. As to the secret session, we are unable to condemn the holding of an executive session after the hearing for the purpose of arriving at a decision. All of the *proceedings* were held in public. This latter requirement is much like that which compels a judge to conduct business in open court. He is not compelled to allow the public to participate in his deliberations.

Almost the identical contentions were raised in *People v. Pitcher,* 61 Colo. 149, 156 P. 812. The objections there made are summarized on page 154 as follows:

"The answer of respondent questions the right of

relators to prosecute the action; sets forth respondent's lack of knowledge as to whether the Tax Commission examined the abstracts of assessment of the various counties of the state, or secured any information for the purpose of determining whether the property of the several counties had been properly assessed; alleges that the assessment made by respondent placed the property of the City and County of Denver upon the assessment roll at its full cash value; that the increase in the assessed valuation on property in the City and County of Denver, and the findings and report in relation thereto of the Tax Commission to the State Board of Equalization 'were made arbitrarily, capriciously and unlawfully, and as a matter of guess or chance, and without the exercise of any method or system whatever' in that it was made 'solely upon the findings and report made' to it by the Tax Commission, and that while such board heard some, including respondent, it refused to hear other witnesses in relation to the matter; admits that the Tax Commission submitted its report to the State Board of Equalization; * * * "

At pp. 176, 177 of the same volume the court commented upon the type of evidence necessary for the Board of Equalization:

"However, should we finally hold that where the law requires that a board of equalization act upon specific evidence, no other action may be permitted, the rule is in no wise applicable to the case at bar. Our Constitution is silent in regard to the evidence or character thereof essential to valid action upon the part of the State Board of Equalization in the performance of its duties. It may, therefore, resort to any source of information it may desire in reaching its conclusions, even though it be assumed that it may not reach its conclusions from its own knowledge. Indeed, the majority of this court, speaking thru Mr. Justice Hill, has heretofore held that where the fundamental law creates an agency and invests it with power, without prescribing

the manner in which it may be exercised, the agency is at liberty to adopt its own mode of procedure. *People ex rel. Moore v. Perkins*, 56 Colo. 1, 42, 43, 44, 137 Pac. 55, Ann. Cas. 1914D, 1154. If the board did not swear and examine witnesses upon the subject, it is immaterial. The Constitution does not require it and contemplates no such means of information. The Board of Equalization had before it the sworn abstracts of assessment of the several county assessors and also the information that in the judgment of the State Tax Commission a certain raise upon specific classes of property should be made in order to bring the same to the constitutional requirement of full cash value, together with the general knowledge possessed by their own members in their acquaintance with the property contained in the state. It, therefore, appears that the board had jurisdiction, and acted upon the kind of evidence and information which the Constitution contemplates.

The "secret session" feature was considered on pages 175, 176:

"But it is said they adopted a schedule of equalization prepared by one of the assessors, and accepted it after ten minutes secret session. Somebody had to prepare it. Often, and in many boards, some one willing shoulder lifts more than its proportion of the common burden. When or how this schedule was made; how much of the labor and patience it represented; and how many of the other members had impressed upon it the results of their own knowledge we do not know. It is our duty to assume that it was carefully framed, and being so, we have no warrant to measure its wisdom by the brief minutes allotted to its adoption. Such a test might make havoc with the last day's work of many legislatures."

We are not disposed to disturb the law as it has heretofore existed regarding the type of procedure which must be observed by the Board. The Constitutional provision creating the Board does not contemplate a full scale hearing similar to that which obtains in a court-

room. We agree with the observations of the court in *People v. Pitcher,* supra, that the Board must be permitted to determine (at least within limits) its own rules of procedure. And see also *First National Bank v. Patterson,* 65 Colo. 166, 176 P. 498; *First Nat. Bank v. Weld County,* 264 U.S. 450, 44 S. Ct. 385, 68 L. Ed. 784.

As to the contention that the *procedure* does not comply with the requirements of due process of the Fourteenth Amendment to the Constitution of the United States, the decision of the Supreme Court of the United States in *Bi-Metallic Investment Company v. Board of Equalization,* supra, would appear to answer all of these arguments.

It is our opinion that the procedural objections are without merit.

7. *Alleged Failure to Comply with Time Requirements.*

Section 137-7-1 provides:

"The State board of equalization shall sit on the third Monday of September, * * *."

Section 137-7-7 requires that it is to complete its work on or before the fourth Monday of September. This section provides in pertinent part as follows:

"On or before the fourth Monday in September, the state board of equalization shall complete the equalization and the state auditor shall transmit to the clerk of each county a statement of the changes, if any, which have been made in the assessments, * * * "

In the case at bar the Board held its meeting on the third Monday of September and then adjourned until the fourth Monday. On that later date it reached its conclusions. There is no contention that there was noncompliance with the statute in that regard. Complaint is made that the County Assessor was not formally notified on the same date. It is undenied that the Assessor and the other respondents were present when the decision of the Board was announced, and the record also reveals that the Assessor actually notified the Board of

County Commissioners a few days after the hearing that the decision of the Board had been adverse and that he was not going to comply with it. On September 29, 1958, the Assessor filed a "Notice of Appeal" with the Board. The formal notice of the State Auditor addressed to the County Assessor is dated September 30, 1958. Civil Action No. 13,791 had then been filed in the District Court of Arapahoe County.

Assuming that the statutory provisions having to do with time of meeting are mandatory, we are unable to agree that respondents were prejudiced by the failure to give formal notice as of September 22, 1958, because:

(1) *Actual* notice was given to the Assessor on that day;

(2) Respondents were in no way prejudiced by the failure to transmit the notice on the day of the final hearing;

(3) The Board, in fact, completed its deliberations within the prescribed time and the notice was not a part of the hearing and determination; and

(4) The notice provided for is entirely for the benefit of the Assessor and in no way affects the taxpayers.

▮▮ The statute requires the Board to complete the equalization on or before the fourth Monday in September. It does not specifically dictate that the notice be given on the fourth Monday although the statute would seem to contemplate that it be given on that date. We have examined the cases cited by respondents in support of their contention that the failure to give timely notice is fatal. These cases do not govern the instant fact situation, but rather deal with the Board action within the period within which it is authorized to act or consider the necessity for giving timely notice of *hearing* where such notice is required by statute.

The Assessor alone is concerned with receipt of this notice and his concern stems from the fact that he must notify the cities, towns and school districts. Here, however, the Assessor had actual notice and had no inten-

tion of complying with it in any event. In these circumstances the delay was not fatal.

A somewhat analogous problem is considered in *Tallon v. Vindicator Consolidated Gold Mining Co.*, 59 Colo. 316, 149 P. 108. Here the court distinguished between those notices which are for the benefit of the taxpayer — for the purpose of giving him notice and an opportunity to be heard, and those which affect the officer only. The former were held to be mandatory, whereas the latter were said to be directory only. It said (at p. 328):

"Whether statutes involving the constructive steps incident to taxation are mandatory or directory depends upon whether or not the directions given the officers are for the benefit of the taxpayer, to give him notice and an opportunity for a hearing, or for any other purpose important to him. The time for fixing the levy, and delivering the tax warrant to the treasurer, are not for the purpose of giving the taxpayer notice, or a hearing, and are of no concern or importance to him so far as the time for doing the acts are concerned. Unquestionably it is the duty of the board to make the levy so that the assessor can certify the tax list and warrant to the treasurer on or before the 1st of January, but a failure of the commissioners, or the assessor, to do either within the time specified, in no manner affects the taxpayer and is directory. Cooley on Taxation (2d Ed.), pp. 283, 289; *State v. Hannibal Co.*, 113 Mo. 297, 21 S.W. 14; *Wingate v. Ketner*, 8 Wash. 94, 35 Pac. 591; *Perry and Hale Counties v. Railway Co.*, 65 Ala. 391; *Hallo v. Helmer*, 12 Neb. 93, 10 N.W. 568; *State v. Harris*, 17 Ohio St. 615; *State ex rel. v. Bank*, 120 Mo. 161, 25 S.W. 372."

A provision for a date of hearing, on the other hand, is for the benefit of the taxpayer and consequently is mandatory. See *Tarabino Real Estate Co. v. Sandoval*, 115 Colo. 336, 173 P. (2d) 459.

8. *Rights of the Taxpayers.*

We do not agree with the contention of the re-

spondent taxpayers that they are entitled to a court review of the action of the Board through the remedies of injunction, declaratory relief or certiorari. It is not contemplated that the entire levy and collection machinery shall be halted while they have a hearing. A remedy allows them to recover the amount paid under protest if it shall be determined to be illegal. See Session Laws 1957, Chapter 267, Section 16 (1) and (2), page 807. Exhaustion of this administrative remedy has been held to be a prerequisite to relief in equity against an assessment. *First National Bank of Greeley v. Patterson,* 65 Colo. 166, 176 P. 498. See also *Singer Sewing Machine Co. v. Benedict,* 229 U.S. 481, holding that this section affords a complete, adequate and speedy remedy at law.

The position of the taxpaper respondents is no better than that of the Assessor. They do not have a statutory appeal to the district court and they have failed to demonstrate their right to relief by extraordinary writ.

We find no basis in the law or in the facts presented for the refusal of respondent assessor to comply with the directions of the State Board of Equalization. We further conclude that the District Court of Arapahoe County lacks jurisdiction to proceed in Action No. 13,791. It is therefore ordered that the rule to show cause issued herein be made absolute and that the respondent, Albert R. Hively, Assessor of the County of Arapahoe, carry out the Order of the petitioner, the Board of Equalization, fixing the 1958 valuation of real and personal property in Arapahoe County as submitted by the Colorado Tax Commission in the sum of $153,-523,910. It is further ordered that the District Court in and for the County of Arapahoe, State of Colorado, be prohibited from taking any further action in Civil Action No. 13,791.

MR. CHIEF JUSTICE KNAUSS not participating.